6 F.3d 147
 Harvey TABRON, Appellant
v.
Lt. GRACE, (Lieutenant); Major Price; Correct Officer
Gross, (Corrections Officer), (Corrections Officer), a/k/a
Perkins; Sergeant Maskulyak; R. Sobina, Deputy Warden for
Treatment; A. Domovich, Deputy Warden Operations; Thomas
Fulcomer; M.P. Cooper.
 No. 92-7018.
 United States Court of Appeals,
Third Circuit.
 Argued April 27, 1993.
Decided Oct. 5, 1993.
 
 Carl Solano (Argued), Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for appellant.
 Ernest D. Preate, Jr., Atty. Gen., Gregory R. Neuhauser (Argued), Sr. Deputy Atty. Gen., Amy Zapp, Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Office of Atty. Gen. of Pennsylvania, Harrisburg, PA, for appellees.
 Before: BECKER, HUTCHINSON and WEIS, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 Appellant Harvey Tabron, a prisoner at the State Correctional Institution in Huntington, Pennsylvania, brought this suit under 42 U.S.C. Sec. 1983 against eight prison officials, claiming that they had violated his constitutional rights by failing to protect him from the assault of another prisoner. Tabron appeals the denial of his request for appointment of counsel, the denial of his request for free copies of deposition transcripts, the denial of his motion to compel responses to his interrogatories, and the court's final order granting summary judgment in favor of the defendants.
 
 
 2
 The magistrate judge, see infra n. 2, declined to appoint counsel, stating that counsel may be appointed to represent an indigent civil litigant under 28 U.S.C. Sec. 1915(d) only in "exceptional circumstances." We conclude that this "exceptional circumstances" limitation is not supported by Sec. 1915(d), and hence that the magistrate judge did not properly exercise discretion regarding whether to appoint counsel. In addition, we take this opportunity to announce some standards for appointment of counsel under Sec. 1915(d). We will vacate the judgment and remand for the district court (or the magistrate judge) to reconsider Tabron's request for counsel in accordance with these standards. If counsel is appointed, the district court should allow additional discovery. Because the record on the merits may then change, we do not address Tabron's other arguments at this time, except for his contention that the district court erred in denying his request for free copies of deposition transcripts, which we discuss for the guidance of the district court on remand. On that point, we find that the district court correctly concluded that it had no authority to provide an in forma pauperis litigant with copies of deposition transcripts at the government's expense.
 
 I. FACTS AND PROCEDURAL HISTORY
 A. Background Facts
 
 3
 On March 21, 1989, Tabron, a prisoner at Huntington State Correctional Institution, was approached by Charles Evans, a fellow inmate, who offered to sell Tabron some marijuana cigarettes. Defendant Sgt. Francis Maskulyak, a prison guard, caught the two inmates with the marijuana and issued misconduct reports for both of them. According to Tabron's affidavit, Evans threatened Tabron with bodily harm in the presence of Sgt. Maskulyak if Tabron did not accept responsibility for the misconduct.
 
 
 4
 Later that evening, Tabron and Evans were called to the prison control area so that prison officials could review their misconduct reports and determine whether it was necessary to place them in temporary confinement prior to their respective misconduct hearings. Defendant Lt. James Grace, who was assigned to the control center that evening, decided not to place Evans and Tabron in pre-hearing confinement. Grace explained in his affidavit that the misconduct was a minor, nonviolent offense which normally does not require pre-hearing confinement. After sitting the two inmates down for thirty minutes of questioning and observation, Grace determined that, although they were angry with each other, there was no significant risk of physical threat or intimidation. According to Tabron's affidavit, however, Evans threatened him with bodily harm in the control center in the presence of Grace, Maskulyak, and an inmate named Donald Leonard. Grace and Maskulyak both deny that they heard Evans make any physical threats toward Tabron.
 
 
 5
 After the meeting in the control room, both Evans and Tabron were sent back to their respective cellblocks. Tabron states in his affidavit that at about 8 a.m. on the following morning there was a "heated confrontation" between him and Evans in the presence of Grace, during which Evans repeated his threats against Tabron. At about 10 a.m., Evans approached Tabron and attacked him with a razor blade attached to the end of a pin. According to Tabron's affidavit, defendant Officer Mary Perkins was present during the assault, but chose not to intercede. Inmate Leonard, who also was present during the assault, intervened and subdued Evans. Tabron suffered a laceration across his jaw that required 21 stitches, and a slash across the right side of his face that required 11 stitches.
 
 
 6
 After the assault, both Tabron (who had received medical treatment) and Evans were placed in temporary administrative custody under the normal prison procedures that follow a violent incident. At a hearing on the following day before defendants Director of Treatment Melvin Cooper, Deputy Warden Raymond Sobina, and Major James Price, Tabron was informed that he would remain in administrative custody pending investigation of the assault, again under standard prison procedures. Later that day, at a separate hearing on the marijuana misconduct, Tabron pled guilty to the charge of possessing contraband and was released from any disciplinary confinement for that offense. Tabron was also cleared of any responsibility for the Evans assault. The hearing examiner explained, however, that Tabron's administrative confinement would continue pending the investigation of the assault. Tabron was released from administrative confinement on March 30, 1989. At a separate hearing, Evans was found guilty of prison misconduct with respect to the assault, was given a 90-day period in lock-up, and was assessed medical costs.
 
 B. Proceedings Before the District Court
 
 7
 In May 1989 Tabron brought this action pro se in the district court for the Middle District of Pennsylvania against the prison officials allegedly involved in the events surrounding the Evans assault and their supervisors. Tabron's complaint alleged the following: that defendants Grace and Maskulyak heard Evans threaten Tabron prior to the attack, but failed to take any measures to protect him; that defendant Perkins was present during the assault and deliberately refused to intercede; that, after the assault, Tabron was improperly placed in administrative segregation with the approval of defendants Cooper, Sobina, and Price; and that Huntington Superintendent Thomas Fulcomer, Deputy Superintendent Andre Domovich, Cooper, and Price, in their supervisory capacities, failed to prevent the assault and failed to discipline Grace, Maskulyak, and Perkins for their mishandling of the incident.
 
 
 8
 Pursuant to the local rules of the Middle District of Pennsylvania, see Middle District Rule 901, Tabron's case was assigned to a magistrate judge for pretrial proceedings. Tabron moved for appointment of counsel, see 28 U.S.C. Sec. 1915(d), arguing that he did not have the legal education or experience necessary to present his case and that he needed an attorney to assist him with discovery. Defendants did not oppose Tabron's motion, but the magistrate judge denied it, stating in his order: "Non-compensated counsel can be appointed by the court in civil rights cases only when exceptional circumstances exist. No such circumstances exist in this case." (citations omitted) Tabron proceeded to represent himself.
 
 
 9
 During discovery, Tabron's lack of resources and his unfamiliarity with discovery rules and tactics put him at a significant disadvantage. The defendants took depositions of Tabron, Evans, inmate Leonard (who witnessed both the assault and the subsequent meeting in the prison control area), and an additional inmate who witnessed the assault. Tabron attended and participated in the depositions but could not afford copies of the transcripts. Also unable to afford to take his own depositions, Tabron sought written discovery. His first set of interrogatories was returned unanswered by the defendants because the six-month discovery deadline under Middle District of Pennsylvania Rule 406 had passed. Tabron moved for extension of the discovery deadline, but no action was taken on the motion, apparently because Tabron had failed to file a supporting brief. Two months after his first request for an extension, Tabron renewed his motion, and, in August 1990, the magistrate judge granted a 60-day extension. Tabron immediately served new interrogatories and document requests on the defendants. Six weeks later he served a second set of interrogatories.
 
 
 10
 Defendants answered 16 of the initial 40 questions in Tabron's first set of 44 interrogatories, objecting to the remaining 24 of those first 40 questions on the ground that they were not reasonably calculated to lead to the discovery of admissible evidence. Of the 16 questions within the initial 40 to which the defendants responded, the response to nine of them was: "Defendants are still gathering information relating to this interrogatory and will supplement this response." Defendants never supplied supplementary responses to any of these questions. Defendants objected to all questions beyond the fortieth in the initial set of interrogatories and to all 98 questions in the second set on the ground that they exceeded the maximum number of 40 interrogatories per party permitted by Middle District Rule 402.8.
 
 
 11
 In February 1991, the magistrate judge entered an order requiring that all dispositive motions be filed within 60 days. Tabron thereupon filed three discovery-related motions: a request that the court order that he be provided with copies of the transcripts of the depositions taken by defendants, a motion to compel answers to his interrogatories, and a motion to compel responses to his document requests. Defendants responded to these motions and then moved for summary judgment.
 
 
 12
 Tabron responded to the defendants' summary judgment motion, but did so without the benefit of most of the discovery information he sought and without copies of any deposition transcripts. Tabron's brief cited to the deposition testimony either from memory or by referring to pages of depositions that he had been allowed to inspect. Due to a misunderstanding between defendants' counsel and the court reporter, Tabron did not receive a copy of his own deposition to read and sign, pursuant to Fed.R.Civ.P. 30(e), until after all of his responses to defendants' dispositive motions had been filed. Tabron also filed an affidavit in support of his opposition to the summary judgment motion, setting forth his personal knowledge of the events in question.
 
 C. The District Court's Rulings
 
 13
 In September 1991, the magistrate judge filed a report and recommendation that each of Tabron's discovery-related motions be denied and that defendants' motion for summary judgment be granted in its entirety. The magistrate judge found no statutory authority for the government to provide an in forma pauperis litigant with free copies of deposition transcripts. He concluded that Tabron's motion to compel compliance with his document requests was moot because defendants had offered to make arrangements for Tabron to review the requested documents. As for Tabron's motion to compel responses to his interrogatories, the magistrate judge found that defendants had properly refused to answer all interrogatories beyond the first 40, the maximum number permitted by the local rule. He also recommended that the court refuse to compel responses to the unanswered questions within the first 40 interrogatories because it found that those questions did not seek information relevant to the subject of the suit.
 
 
 14
 Finally, the magistrate judge recommended that summary judgment be granted in favor of all of the defendants. The report explained that the only evidence submitted by Tabron--his own affidavit detailing the events leading up to the assault and stating that Lt. Grace and Sgt. Maskulyak had heard Evans threaten Tabron prior to the attack--was not sufficient to create a genuine issue of fact that those defendants were "deliberately indifferent" to Tabron's safety, as must be shown to prevail in an Eighth Amendment claim alleging cruel and unusual punishment in a prison context. See Wilson v. Seiter, --- U.S. ----, ----, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991). With respect to Tabron's claim that Officer Perkins had deliberately failed to protect him during the attack, although the magistrate judge found a dispute of fact as to whether she was present at the scene of the assault, he concluded that this dispute was not material because, even if Perkins were present, Tabron had offered no evidence to show that her failure to intervene was done "maliciously or sadistically with the very purpose of causing harm," as must be established to prevail in an Eighth Amendment challenge to the actions of a prison official in an emergency situation. Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986).
 
 
 15
 The magistrate judge found no basis for Tabron's claims that the supervisory defendants (Fulcomer, Domovich, Sobina, Cooper and Price) had violated his Eighth Amendment rights because there was no evidence that these defendants were present during the assault or were involved in the events leading up to it, and because liability under Sec. 1983 may not be imposed under a respondeat superior theory, see Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir.1976). The magistrate judge also found no basis for Tabron's claim that defendants Grace, Sobina, Cooper and Price had deprived him of due process when they directed or approved his placement in administrative segregation. Tabron filed timely objections to the proposed findings in the report and recommendation of the magistrate judge.
 
 
 16
 The district court adopted the magistrate judge's report and recommendation with respect to each of Tabron's discovery-related motions, with the exception that the court ordered defendants to respond to two of Tabron's interrogatories that asked whether Evans had previously assaulted anyone at Huntington. After the defendants submitted negative responses to those two questions, the court adopted the remainder of the magistrate judge's report and recommendation and entered summary judgment in favor of defendants.
 
 
 17
 Tabron filed a timely notice of appeal, and the district court granted Tabron leave to proceed on appeal in forma pauperis. We have jurisdiction under 28 U.S.C. Sec. 1291. Upon Tabron's motion, a panel of this court directed the clerk to appoint counsel to represent Tabron on appeal.
 
 II. APPOINTMENT OF COUNSEL
 
 18
 The district court's authority to appoint counsel to represent an indigent litigant in a civil case derives from 28 U.S.C. Sec. 1915(d), which provides:
 
 
 19
 The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.
 
 
 20
 Section 1915(d) gives district courts broad discretion to request an attorney to represent an indigent civil litigant. Such litigants have no statutory right to appointed counsel.[1]
 
 
 21
 The magistrate judge, acting under his authority to issue orders disposing of certain pretrial matters, see 28 U.S.C. Sec. 636(b)(1)(A), denied Tabron's request for appointment of counsel, stating in his order: "Non-compensated counsel can be appointed by the court in civil rights cases only when exceptional circumstances exist. No such circumstances exist in this case." Tabron argues that the magistrate judge erred as a matter of law in concluding that he had no discretion to consider appointment of counsel in the absence of "exceptional circumstances." Alternatively, Tabron contends that, even if "exceptional circumstances" must exist to warrant appointment of counsel, such circumstances were present in his case such that the magistrate judge abused his discretion in refusing to request appointed counsel.[2]
 
 
 22
 Although the provision now appearing at 28 U.S.C. Sec. 1915(d) was first enacted by Congress in 1892, there is little guidance in this circuit as to what criteria district courts should use in deciding whether to grant a request for appointment of counsel. In Ray v. Robinson, 640 F.2d 474, 477-79 (3d Cir.1981), we reversed the district court's decision to deny appointment of counsel because the court had improperly concluded that it had no power to appoint counsel to represent an indigent litigant in a civil case. We held that 28 U.S.C. Sec. 1915(d) expressly gave the court discretionary authority to appoint counsel and that the district court, through the magistrate, had failed to exercise that discretion. Id., at 477-78. However, we did not elaborate on the standards district courts should apply in exercising their discretion under Sec. 1915(d), stating only:
 
 
 23
 Because of the diverse nature of the cases in which motions to appoint counsel are made, we deem it inadvisable to establish any general standard as to when counsel should be appointed. The factors which courts have considered in making such decisions are available in the case law.
 
 
 24
 Id., at 478 (citation omitted).
 
 
 25
 Smith-Bey v. Petsock, 741 F.2d 22 (3d Cir.1984), is the only other case in which this court addressed the standards for appointment of counsel under Sec. 1915(d). The plaintiff in Smith-Bey appealed directly from the district court's order denying his request for court-appointed counsel under Sec. 1915(d). Although we dismissed the appeal for lack of appellate jurisdiction, and therefore never reached plaintiff's claim that the district court erred in failing to appoint counsel,[3] we did observe that:
 
 
 26
 [T]he appointment of counsel for an indigent plaintiff in a civil case under 28 U.S.C. Sec. 1915(d) is discretionary with the court and is usually only granted upon a showing of special circumstances indicating the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but meritorious case.
 
 
 27
 Id., at 26.
 
 
 28
 Defendants point to this language in Smith-Bey as support for the magistrate judge's statement that appointment of counsel under Sec. 1915(d) is permissible "only when exceptional circumstances exist." But the dicta in Smith-Bey states that appointment is "discretionary with the court" and "is usually only granted upon a showing of special circumstances." Id. (emphasis added). We therefore do not read this language to support the magistrate's conclusion that appointment is permissible only in exceptional circumstances and that, in the absence of such circumstances, the court has no discretion to appoint counsel.
 
 
 29
 The defendants also rely on cases from other circuits which state that under Sec. 1915(d), appointment of counsel to represent an indigent civil litigant is justified only in "exceptional circumstances." See, e.g., Lavado v. Keohane, 992 F.2d 601, 605-06 (6th Cir.1993) ("Appointment of counsel in a civil case ... is a privilege that is justified only by exceptional circumstances.") (internal quotations and citations omitted); Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir.1990) (same); Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir.1986) ("[A]n indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel."); Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir.1980) ("[T]his court has limited the exercise of [the power to appoint counsel under Sec. 1915(d) ] to exceptional circumstances.") (citations omitted); Cook v. Bounds, 518 F.2d 779, 780 (4th Cir.1975) ("In civil actions the appointment of counsel should be allowed only in exceptional cases.").
 
 
 30
 To the extent that these cases impose a substantive restriction on the district courts' discretion to appoint counsel under Sec. 1915(d),[4] we decline to follow them. Section 1915(d) provides that "[t]he court may request an attorney to represent any such person unable to employ counsel." (emphasis added). Nothing in this clear language suggests that appointment is permissible only in some limited set of circumstances. Nor have we found any indication in the legislative history of the provision to support such a limitation. Accordingly, we conclude that the magistrate judge erred as a matter of law in stating that he had no discretion to appoint counsel in the absence of "exceptional circumstances."
 
 
 31
 The Courts of Appeals for the Second and Seventh Circuits, rejecting the strict "exceptional circumstances" requirement applied in other circuits, have provided district courts with a set of general standards for appointing counsel in the context of Sec. 1915(d). See Hodge v. Police Officers, 802 F.2d 58 (2d Cir.1986); Maclin v. Freake, 650 F.2d 885 (7th Cir.1981) (per curiam). We take this opportunity to follow their example. In so doing, we elaborate upon Smith-Bey by delineating further criteria for ascertaining the "special circumstances" under which counsel may be appointed for an indigent litigant in a civil case.
 
 
 32
 First, as the Seventh Circuit explained in Maclin, the district court must consider as a threshold matter the merits of the plaintiff's claim. "[B]efore the court is justified in exercising its discretion in favor of appointment, it must first appear that the claim has some merit in fact and law." Maclin, 650 F.2d at 887 (quoting Spears v. United States, 266 F.Supp. 22, 25-26 (S.D.W.Va.1967)); see also Rayes v. Johnson, 969 F.2d 700, 703 (8th Cir.) ("The appointment of counsel should be given serious consideration if the [indigent] plaintiff has not alleged a frivolous or malicious claim and the pleadings state a prima facie case.") (internal quotations and citations omitted), cert. denied, --- U.S. ----, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992). If the district court determines that the plaintiff's claim has arguable merit in fact and law, the court should then consider a number of additional factors that bear on the need for appointed counsel.
 
 
 33
 The plaintiff's ability to present his or her case is, of course, a significant factor that must be considered in determining whether to appoint counsel. See Hodge, 802 F.2d at 61; Maclin, 650 F.2d at 888. Courts generally should consider the plaintiff's education, literacy, prior work experience, and prior litigation experience. An indigent plaintiff's ability to present his or her case may also depend on factors such as the plaintiff's ability to understand English, see Castillo v. Cook County Mail Room Dept., 990 F.2d 304 (7th Cir.1993) (instructing district court to appoint counsel on remand to represent indigent plaintiff who had difficulty with the English language), or, if the plaintiff is a prisoner, the restraints placed upon him or her by confinement, see Rayes, 969 F.2d at 703-04 (reversing denial of request for counsel where indigent prisoner was severely hampered in pressing his claims by conditions of confinement making him unable to use typewriter, photocopying machine, telephone, or computer). Where applicable, these factors should be considered.
 
 
 34
 If it appears that an indigent plaintiff with a claim of arguable merit is incapable of presenting his or her case, serious consideration should be given to appointing counsel, see, e.g., Gordon v. Leeke, 574 F.2d 1147, 1153 & n. 3 (4th Cir.), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978), and if such a plaintiff's claim is truly substantial, counsel should ordinarily be appointed. The decision whether to appoint counsel will also be informed by a number of other factors, to which we now turn.
 
 
 35
 In conjunction with the consideration of the plaintiff's capacity to present his or her case, the court must also consider the difficulty of the particular legal issues. The court "should be more inclined to appoint counsel if the legal issues are complex." Hodge, 802 F.2d at 61. As the Seventh Circuit stated in Maclin, "where the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." 650 F.2d at 889.
 
 
 36
 Other key factors are the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation. See Hodge, 802 F.2d at 61; Maclin, 650 F.2d at 887-88. More generally, the court may also consider the extent to which prisoners and others suffering confinement may face problems in pursuing their claims. Additionally, where the claims are likely to require extensive discovery and compliance with complex discovery rules, appointment of counsel may be warranted. See Rayes, 969 F.2d at 703 (reversing district court's denial of request for appointment of counsel in part because conditions of indigent prisoner's confinement severely disadvantaged him in discovery).
 
 
 37
 Similarly, when a case is likely to turn on credibility determinations, appointment of counsel may be justified. See Maclin, 650 F.2d at 888 ("[C]ounsel may be warranted where the only evidence presented to the factfinder consists of conflicting testimony."). The Maclin court explained that when witness credibility is a key issue, "it is more likely that the truth will be exposed where both sides are represented by those trained in the presentation of evidence and in cross examination." Id.; accord Hodge, 802 F.2d at 61; see also Manning v. Lockhart, 623 F.2d 536, 540 (8th Cir.1980) (holding that the district court abused its discretion in refusing to appoint counsel where claims were nonfrivolous and the question of fact turned on witness credibility). Along the same lines, appointed counsel may be warranted where the case will require testimony from expert witnesses. See Moore v. Mabus, 976 F.2d 268, 272 (5th Cir.1992) (district court erred in denying request for counsel to represent indigent civil litigant whose case required testimony from experts on HIV-AIDS management in prison environment).
 
 
 38
 Additionally, we emphasize that appointment of counsel under Sec. 1915(d) may be made at any point in the litigation and may be made by the district court sua sponte. See, e.g., Castillo v. Cook County Mail Room Dept., 990 F.2d 304 (7th Cir.1993) (ordering district court to appoint counsel to represent indigent civil litigant who had difficulty with English language even though litigant had never requested assistance of counsel). Accordingly, even if it does not appear until trial (or immediately before trial) that an indigent litigant is not capable of trying his or her case, the district court should consider appointment of counsel at that point.[5]
 
 
 39
 Finally, in addressing this issue, we must take note of the significant practical restraints on the district courts' ability to appoint counsel: the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation.[6] We have no doubt that there are many cases in which district courts seek to appoint counsel but there is simply none willing to accept appointment.[7] It is difficult to fault a district court that denies a request for appointment under such circumstances. We note, however, with cautious optimism, that more lawyers are taking on the responsibility of providing pro bono legal services to indigent litigants. Representation of indigent litigants is not only an important responsibility of members of the bar, but it also provides an excellent opportunity for newer attorneys to gain courtroom experience. In Mallard v. United States District Court, 490 U.S. 296, 310, 109 S.Ct. 1814, 1823, 104 L.Ed.2d 318 (1989), Justice Brennan wrote for the Court: "[I]n a time when the need for legal services among the poor is growing and public funding for such services has not kept pace, lawyers' ethical obligation to volunteer their time and skills pro bono publico is manifest." We encourage lawyers within this circuit to volunteer for such service, and we urge the district courts in this circuit to seek the cooperation of the bar in this regard.
 
 
 40
 We also emphasize that volunteer lawyer time is extremely valuable. Hence, district courts should not request counsel under Sec. 1915(d) indiscriminately. As the Court of Appeals for the Second Circuit has warned:
 
 
 41
 Volunteer lawyer time is a precious commodity.... Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste.
 
 
 42
 Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir.1989).
 
 
 43
 The list of factors we have provided to guide district courts in determining whether to appoint counsel under Sec. 1915(d) is not meant to be exhaustive. We emphasize that appointment of counsel remains a matter of discretion; section 1915(d) gives district courts broad discretion to determine whether appointment of counsel is warranted, and the determination must be made on a case-by-case basis. See Hodge, 802 F.2d at 60; Maclin, 650 F.2d at 886; cf. Rowland v. California Men's Colony, Unit II Men's Advisory Council, --- U.S. ----, ----, 113 S.Ct. 716, 721, 121 L.Ed.2d 656 (1993) (discussing the "permissive language" of Sec. 1915(d)). A district court's decision to deny counsel under Sec. 1915(d), however, is reviewable by a court of appeals for abuse of discretion. Moreover, where the district court has failed to provide reasons for its decision to deny an indigent civil litigant's request for counsel, the court of appeals in some cases may have to remand, for, without the district court's reasons, the appellate court may not be able to determine whether the district court made a reasoned and informed judgment regarding appointment of counsel. See Rayes, 969 F.2d at 704-05. It therefore would be desirable for the district court to explain the reasons for its decision.
 
 
 44
 The magistrate judge in this case applied the incorrect standard for appointment of counsel and offered no other reasons for its denial of Tabron's request for counsel. Therefore, we will vacate the summary judgment order and will remand for the district court (or the magistrate judge) to reconsider Tabron's request for appointment of counsel in accordance with the standards set forth in this opinion.
 
 
 45
 A number of the factors we have recited are obviously relevant to Tabron's request for appointment of counsel. The discovery rules in the Middle District of Pennsylvania are complex and were difficult for Tabron to contend with. Tabron's lack of legal experience clearly put him at a disadvantage countering the defendants' discovery tactics, such as the defendants' failure to supplement their responses, as promised, to nine of the sixteen interrogatories to which they responded. Moreover, the case involves credibility determinations, since several witnesses dispute certain relevant facts. In addition, Tabron's incarceration may have limited his ability to engage in factual investigation. On the other hand, the legal issues in this case do not appear to be complex, and the applicable law is clear. Also, based on his papers, Tabron appears to be literate and reasonably capable.
 
 
 46
 At all events, the district court (or the magistrate judge) must decide the issue in the first instance, including the critical threshold determination of whether Tabron's case has arguable merit in fact and law. While we are inclined to think that it does, the district court is in a better position to make that judgment. If the court determines that counsel should be appointed, the court should then allow reasonable additional discovery. Since in such event the record on the merits may change, we do not address Tabron's other arguments at this time, except for the question of free copies of deposition transcripts, which we address for the guidance of the district court on remand.
 
 
 47
 III. REQUEST FOR FREE COPIES OF DEPOSITION TRANSCRIPTS
 
 
 48
 Tabron submits that, in light of his in forma pauperis status, the district court erred in refusing to grant his motion to obtain free copies of transcripts of the depositions taken by defendants.[8] The district court, approving the recommendation of the magistrate judge, concluded that it had no authority under 28 U.S.C. Sec. 1915, or any other statute, to order the government to pay for deposition transcripts for an indigent litigant. We agree.
 
 
 49
 The in forma pauperis statute, 28 U.S.C. Sec. 1915, permits the waiver of prepayment of fees and costs for in forma pauperis litigants, see 28 U.S.C. Sec. 1915(a), and allows for payment by the United States of the expenses of "printing the record on appeal in any civil or criminal case, if such printing is required by the appellate court," and of "preparing a transcript of proceedings before a United States magistrate in any civil or criminal case, if such a transcript is required by the district court," 28 U.S.C. Sec. 1915(b). There is no provision in the statute for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant. See Moss v. ITT Continental Baking Co., 83 F.R.D. 624, 625 (E.D.Va.1979) (quoting Haymes v. Smith, 73 F.R.D. 572, 574 (W.D.N.Y.1976)).
 
 
 50
 In Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir.1987), cert. denied, 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988), we rejected an indigent civil litigant's argument that the district court erred in refusing to have the government pay for an expert medical witness. We explained:
 
 
 51
 Congress has authorized the courts to waive the prepayment of such items as filing fees and transcripts if a party qualifies to proceed in forma pauperis. 28 U.S.C. Sec. 1915. However, we have been directed to no statutory authority nor to any appropriation to which the courts may look for payment of expert witness fees in civil suits for damages.
 
 
 52
 Id., at 474; accord Tedder v. Odel, 890 F.2d 210, 212 (9th Cir.1989); McNeil v. Lowney, 831 F.2d 1368, 1373 (7th Cir.1987), cert. denied, 485 U.S. 965, 108 S.Ct. 1236, 99 L.Ed.2d 435 (1988). Similarly, we conclude that there is no statutory authority for a court to commit federal funds to pay for deposition transcripts. Several other courts have similarly held. See In re Richard, 914 F.2d 1526, 1527 (6th Cir.1990) (Section 1915 "does not give the litigant a right to have documents copied and returned to him at government expense."); Lewis v. Precision Optics, Inc., 612 F.2d 1074, 1075 (8th Cir.1980) (rejecting plaintiff's claim that the district court erred in not requiring the government to pay for deposition expenses or copies of records); Doe v. United States, 112 F.R.D. 183, 185 (S.D.N.Y.1986) (same); Toliver v. Community Action Commission to Help the Economy, Inc., 613 F.Supp. 1070, 1072 (S.D.N.Y.1985) ("[t]here [is] no clear statutory authority for prepayment of discovery costs pursuant to 1915 or otherwise"); Sturdevant v. Deer, 69 F.R.D. 17, 19 (E.D.Wis.1975) (Sec. 1915 does not authorize federal funds for the "cost of taking and transcribing a deposition").
 
 
 53
 Tabron argues alternatively that, even if Sec. 1915 does not authorize the courts to order the provision of copies of deposition transcripts to an indigent civil litigant at government expense, it was within the equitable powers of the district court to order the defendants to pay for deposition transcripts for Tabron as a condition for taking the depositions. Tabron points to Haymes v. Smith, 73 F.R.D. 572 (W.D.N.Y.1976), where the court, exercising its general discretion over discovery matters, ordered the defendant to advance the indigent plaintiff's travel expenses because the plaintiff had to depose the defendant outside of the district where the action was brought. See also Robbins v. Abrams, 79 F.R.D. 600, 602 (S.D.N.Y.1978) (court ordered defendant to pay stenographic and translation costs for depositions taken by plaintiff in Europe because repeat depositions were necessitated by defendant's bad faith and deceitfulness in previous depositions).
 
 
 54
 We agree that, as part of the inherent equitable powers of the district court in supervising discovery, a district court may, under some circumstances, exercise its discretion to order an opposing party to pay for or to provide copies of deposition transcripts for an indigent litigant as a condition precedent to allowing that party to take depositions. Cf. Navarro de Cosme v. Hospital Pavia, 922 F.2d 926, 930 (1st Cir.1991) (holding that the district court order requiring each party to pay for its adversaries' expenses in connection with the taking of depositions, was well within the broad latitude of the district court in managing discovery). However, the magistrate judge declined to do so here after finding that copies of the transcripts were not necessary for Tabron to make his case, at least at the summary judgment stage. He explained in his report that Tabron attended and participated in all of the depositions and therefore was able to take notes and compile information from the live testimony. Further, the magistrate judge noted that Tabron had not demonstrated in any of his papers why he needed copies of the transcripts to defend against defendants' motion for summary judgment.
 
 
 55
 Given that, as a general rule, indigent litigants bear their own litigation expenses, at least initially,[9] see Doe, 112 F.R.D. at 184, we cannot say that the district court's decision not to order defendants to provide Tabron with copies of the deposition transcripts was an abuse of discretion. Accordingly, we will affirm the court's denial of Tabron's motion to obtain copies of the deposition transcripts. Inasmuch as there may be additional discovery on remand, the principles we have announced should be of help to the district court on further rulings in the discovery area.
 
 IV. CONCLUSION
 
 56
 For the foregoing reasons, we will vacate the judgment and remand the case to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 In Mallard v. United States District Court for the S. Dist. of Iowa, 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989), the Supreme Court held that Sec. 1915(d) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request."
 
 
 [2]
 It appears from the record that Tabron never filed an objection with the district court regarding the magistrate judge's order denying his request for counsel, as is required under Middle District of Pennsylvania Rule 904.1. Normally, a party who fails to object before the district court to a magistrate judge's ruling on a non-dispositive pretrial matter waives that objection on appeal. See United Steelworkers of America v. New Jersey Zinc Co., 828 F.2d 1001, 1004-08 (3d Cir.1987). As a general rule, we do not consider on appeal issues that were not raised before the district court. See Americans Disabled for Accessible Public Transp. v. Skinner, 881 F.2d 1184, 1197 (3d Cir.1989). However, the decision whether or not to address an issue not raised before the district court "is one of discretion rather than jurisdiction," and we have addressed such issues "when prompted by exceptional circumstances." Selected Risks Ins. Co. v. Bruno, 718 F.2d 67, 69 (3d Cir.1983)
 We are prompted to address the appointment issue here, in spite of Tabron's failure to raise it before the district court, for several reasons. First, as we will explain, see infra, standards for appointment of counsel in a civil case under Sec. 1915(d) have not been set forth in any detail by this court. Second, on appeal, the appointment issue was briefed and argued on the merits by the parties, and the defendants never have raised waiver as a defense. Third, Tabron was a pro se litigant before the district court, and we have traditionally given pro se litigants greater leeway where they have not followed the technical rules of pleading and procedure. See Riley v. Jeffes, 777 F.2d 143, 147-48 (3d Cir.1985); Siers v. Morrash, 700 F.2d 113, 116 (3d Cir.1983). Finally, Tabron's contention that the denial of his request for counsel was error is intertwined with his arguments challenging the grant of summary judgment, for he contends that the lack of counsel adversely affected his ability to produce enough evidence to survive summary judgment. Under these circumstances, we believe it is appropriate to address the appointment issue. Additionally, we note that there is no jurisdictional problem with our addressing the appointment issue. There is no defect in Tabron's notice of appeal, which appealed from the district court's summary judgment order, for we construe notices of appeal liberally as covering unspecified prior orders if they are related to the specific order that was appealed from. See, e.g., Drinkwater v. Union Carbide Corp., 904 F.2d 853, 858 (3d Cir.1990); Williams v. Guzzardi, 875 F.2d 46, 49-50 (3d Cir.1989).
 
 
 [3]
 We held that the appeal was interlocutory and that it did not fall within the narrow class of immediately appealable interlocutory orders under Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Smith-Bey, 741 F.2d at 23-25
 
 
 [4]
 Because the courts of appeals in these cases were reviewing discretionary district court decisions refusing to appoint counsel, it may be that the pronouncements that counsel may be appointed under Sec. 1915(d) only in "exceptional circumstances" reflect the deferential standard of review, i.e., that a court of appeals will reverse a district court's exercise of discretion against appointment of counsel only in exceptional circumstances. It is undisputed that, because 28 U.S.C. Sec. 1915(d) gives the district courts broad discretion to appoint counsel, the courts of appeals should reverse that exercise of discretion only where the party seeking appointment has shown that the district court's decision not to appoint counsel was clearly an abuse of discretion
 
 
 [5]
 Of course, before appointing counsel under Sec. 1915(d), courts should consider whether an indigent plaintiff could retain counsel on his or her own behalf. If counsel is easily attainable and affordable by the litigant, but the plaintiff simply has made no effort to retain an attorney, then counsel should not be appointed by the court. See Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir.1989). But see infra n. 6 and accompanying text, discussing the lack of counsel willing to represent indigent civil litigants, especially prisoners
 
 
 [6]
 In his comprehensive article on the problems faced by prisoners who bring civil rights actions, Dean Eisenberg points out that there are very few organizations that provide legal assistance to prisoners in civil rights cases. See Howard S. Eisenberg, Rethinking Prisoner Civil Rights Cases, 17 S.Ill.L.J. 417, 462-66 (1992). He explains that approximately 25,000 prisoner civil rights cases are filed each year under Sec. 1983, and, although the majority of these cases are frivolous, many are not. Id. at 482. Yet, there are few attorneys who are willing to provide free legal assistance to prisoners in civil rights cases. See id. at 462-66. The possibility of obtaining attorneys fees under 42 U.S.C. Sec. 1988 is generally not a sufficient financial inducement, for fees thereunder depend upon success in the litigation, and the prospective amount of recovery in most prisoner civil rights cases is usually small. See id. at 477
 
 
 [7]
 As we have explained, courts have no authority to compel counsel to represent an indigent civil litigant. See supra n. 1. We note in this regard that the frequent unwillingness of lawyers to accept appointment in such cases is not only a function of the time pressures lawyers face in trying to earn a living in an increasingly competitive field, but also by circulating knowledge of the indignities that some lawyers have been subjected to by certain litigants, including verbal and written abuse, excessive demands and complaints, and malpractice suits. We trust that district judges will be sensitive to such problems in making discretionary decisions in this area
 
 
 [8]
 After counsel was appointed for Tabron on appeal, copies of the depositions were obtained by counsel. The issue, however, is not moot because Tabron's lack of copies of the depositions adversely affected his ability to respond to defendants' dispositive motions. Thus, if the court erred in denying Tabron's request for copies of the transcript, that error could be reversible
 
 
 [9]
 Of course, deposition expenses, including the costs of deposition transcripts, may be awarded as costs to the prevailing party if the court determines, at the end of the litigation, that the copies were of papers necessary for use in the case. See 28 U.S.C. Sec. 1920