Alonzo ROBINSON and Russell Davis

v.

Martin HORN, Commissioner
of Corrections, et al.

Civil Action No. 96–cv–1637.

United States District Court,
E.D. Pennsylvania.

April 15, 1996.

Alonzo Robinson, Camp Hill, PA, pro se.

Russell Davis, Camp Hill, PA, pro se.

## MEMORANDUM

DITTER, District Judge.

This is a lawsuit brought by two Pennsylvania state prisoners pursuant to 42 U.S.C. § 1983. Before me are the plaintiffs' applications to proceed *in forma pauperis* and their motion for the appointment of counsel. Additionally, before this action is allowed to proceed, I must determine whether all or part of it should be dismissed as frivolous under 28 U.S.C. § 1915(d). *See Roman v. Jeffes,* 904 F.2d 192, 195 (3d Cir.1990).

In their three-count complaint, the plaintiffs, Alonzo Robinson and Russell Davis, allege that in October, 1995, the defendants, various named and unnamed Pennsylvania state prison officials, removed them from their cells, threatened, handcuffed and shackled them, and transported them from the State Correctional Institution at Graterford near Philadelphia to the disciplinary unit in a state prison in Camp Hill, Pennsylvania. As residents of the disciplinary unit, Robinson and Davis are subject to more restrictions than prisoners in the general prison population. After his transfer to Camp Hill, prison officials abridged Robinson's ability to practice his religion and limited visits by family members, friends, and a religious advisor. The plaintiffs also allege that the defendants either lost or "stole" their personal property, including some legal materials. Sixteen other prisoners were transferred to disciplinary units in similar fashion.[1] The complaint further charges that Defendant Martin Horn, the commissioner of the Pennsylvania Department of Corrections, falsely accused the plaintiffs of committing unspecified crimes while incarcerated and certain Muslim women who visited the prison of being prostitutes. Those accusations were published in the "media."

In count one, the plaintiffs allege that their transfer, the false accusations against them, and the loss of their property violated their rights to due process and equal protection. In count two, they contend that the officials' conduct constituted cruel and unusual punishment. Finally, in count three they allege that Horn's statement that the Muslim women visitors were prostitutes infringed Robinson's and Davis' religious rights, and that the prison officials' restriction of Robinson's access to his religious advisor and family and friends violated his right to practice his religion. As relief, the plaintiffs seek compensatory and punitive damages, and an injunction requiring the defendants to return them to the general prison population.

Both Davis and Robinson have applied for *in forma pauperis* status under 28 U.S.C. § 1915(a) which would allow them to file their complaint without having to pay the $120 filing fee required by 28 U.S.C. § 1914(a).[2] The *in forma pauperis* statute "is designed to ensure that indigent litigants have meaningful access to the courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). Consistent with this goal, it allows persons to file lawsuits who state in good faith and under oath that they are unable to pay the cost of filing and maintaining such a suit. *Id.* Section 1915(d) allows district courts to dismiss lawsuits if the plaintiff's claim of poverty "is not true." I have carefully examined both Robinson's and Davis' applications.

Robinson's application and accompanying affidavit indicate that he is entitled to file his complaint without paying a filing fee. He has no assets and only a modest income. He presently has a negative balance of $2.57 in his prison account and has no source of income other than his prison employment and occasional small cash gifts. Robinson's

---

1. The plaintiffs seek permission to have this case proceed as a class action in order to add the 16 other prisoners as plaintiffs. The fact that I have allowed some of Robinson's and Davis's claims to proceed does not necessarily mean that I would allow them to serve as class representatives if I allowed this case to proceed as a class action.

2. I originally dismissed without prejudice the complaint as to Davis because he did not file an application to proceed *in forma pauperis* with the complaint. Shortly after that dismissal, Davis filed the signed and certified application which I am now considering.

prison employment paid him approximately $75 per month until October, 1995. However, since his transfer to Camp Hill at that time, Robinson has received only approximately $25 from the prison payroll. He has spent that money on postage, telephone calls, cable television, and other unspecified purchases at the prison commissary.

■ Davis' financial situation is much different. I conclude, based on his application and affidavit, that he is financially able to pay part of the $120 filing fee and that his claim of poverty "is not true." Therefore, I will dismiss the complaint as to Davis without prejudice to his right to re-file it once he has paid $50 as a filing fee. His affidavit reveals that in October, 1995, he had a balance of $680.25 in his prison account. It presently contains $93.72. Between October and the date of the affidavit, Davis spent his money on postage, telephone calls, cable television, and goods from the prison commissary. In addition to those expenses, on December 26, 1995, Davis gave a $400 cash gift to a person named "Loretta Davis." Plaintiff Davis has no dependents and, as a prisoner, the state pays for his food, clothing, and shelter. My conclusion that Davis is able to afford a $50 filing fee is based on the balance in his prison account, that he has no dependents and is not required to pay for his own necessities, and that he has the means to make a $400 gift. I note that if he had not made the gift, he would have had sufficient funds in his prison account to pay the entire $120 filing fee required of other litigants.

Payment of the partial filing fee will not impose an undue hardship on Davis and the $43.72 remaining in his prison account after paying the filing fee will give him an ample amount of money to pay for the small amenities òf prison life. *See Bullock v. Suomela*, 710 F.2d 102, 103 (3d Cir.1983). In addition, my ordering him to pay $50 to commence this suit does not necessarily mean that he must pay *all* fees associated with this lawsuit. My ruling relates only to the filing fee. If Davis elects to re-file his complaint in accordance with this memorandum and order, he may file a renewed application to proceed *in forma pauperis* if circumstances change and

he is no longer able to pay other costs of this lawsuit.

■ Davis and Robinson also request that I appoint counsel to represent them. They claim they are unable to afford an attorney, are unfamiliar with the legal system, and need assistance in conducting investigation and discovery. In *Tabron v. Grace*, 6 F.3d 147 (3d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1306, 127 L.Ed.2d 657 (1994), the United States Court of Appeals for the Third Circuit held that when deciding whether to appoint counsel for indigent litigants, district courts should consider the merits of the plaintiffs' claim, the plaintiffs' ability to present their case, the difficulty of the legal issues, and the degree to which the case will require extensive factual investigation or turn on credibility determinations. *Id.* at 156. Because I find that consideration of these factors weighs heavily against appointment of counsel, I will deny the motion.

First, as explained below, while not all legally frivolous, the plaintiffs' claims appear to have little merit. Appointing counsel to pursue cases of little merit will discourage others from taking civil rights cases—even viable ones—and waste a scarce resource, volunteer lawyers. Second, the plaintiffs have the ability to present their case. This ability is evidenced by the fact that they filed a clear and articulate complaint and several other legal documents—all in proper form—that contain proper captions and properly cite legal authority. Third, this case is unlikely to require extensive factual investigation or involve complex legal issues. The plaintiffs complain about events which they personally witnessed and which involve straightforward factual and legal issues relating to whether the defendants' actions were unconstitutional. Finally, at this point it does not appear that this case will turn on credibility determinations which would require a lawyer's cross-examination skills. It is likely that the plaintiffs' transfer and the conditions in the disciplinary unit are well documented in the prison's files. The existence of such documentation makes it unlikely that the plaintiffs will have to extensively cross-examine the defendants because the defendants are not likely to dispute the fact

of the transfer or the conditions in the disciplinary unit.[3] If appointment of counsel becomes necessary later in this litigation, the plaintiffs may file a renewed motion.

■ Before allowing the complaint to be filed and served on the defendants, I must determine whether it is frivolous and should be dismissed. *See* 28 U.S.C. § 1915(d). The United States Supreme Court has described a frivolous complaint as one which "lacks an arguable basis either in law or fact." *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831–32. There is a difference between a frivolous complaint and one that must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted. A frivolous claim is one based on an "indisputably meritless legal theory." *Deutsch v. United States,* 67 F.3d 1080, 1085 (3d Cir.1995). Such a claim is contrasted with a complaint that merely fails to state a cause of action, but which raises some *arguable* question of law—the legal merits of which are open to some legitimate dispute—even if the district court ultimately rejects the theory of the claim and finds that it must dismiss it under Rule 12(b)(6).

■ With those principles in mind, I have examined the complaint in this case and will dismiss parts of it as frivolous because those parts are based on indisputably meritless legal theories. I will dismiss count two to the extent that it alleges that Horn's statements to the "media" relating to the plaintiffs' alleged criminal activities constituted cruel and unusual punishment. The plaintiffs do not—nor could they—allege that such statements "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Thus, Horn's statement did not violate any of the plaintiffs' constitutional rights. Further, to the extent that count three alleges that Horn's statement that certain Islamic women visiting the prison were prostitutes violated the plaintiffs' rights to practice their religion it is dismissed. Because that statement did not refer to the plaintiffs in any way, either explic-itly or implicitly, it could not have violated any of their rights.

I also note that the claim that the defendants' transfer of the plaintiffs from the general prison population into a more restrictive disciplinary unit was unconstitutional is unlikely to succeed. In *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that such transfers do not violate due process when they do not "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Thus, in order to prevail, the plaintiffs would have to prove the unlikely proposition that transfer to the disciplinary unit at Camp Hill imposed such an atypical and substantial hardship on them so as to fall outside the expected parameters of the sentence imposed by the court.

An appropriate order follows.

### ORDER

AND NOW, this 15th day of April, 1996, it is hereby ordered that:

1. Plaintiff Russell Davis' application to proceed *in forma pauperis* is DENIED and the complaint is DISMISSED without prejudice as to him. If Davis wishes the suit to continue as to him, he must pay a $50 filing fee to the Clerk of the Court within 30 days of the date of this order.

2. Plaintiff Alonzo Robinson's application to proceed *in forma pauperis* is GRANTED.

3. The plaintiffs' motion for appointment of counsel is DENIED.

4. To the extent that count two of the complaint alleges that Defendant Martin Horn's statements to the media constituted cruel and unusual punishment, it is DISMISSED as frivolous.

5. To the extent that count three of the complaint alleges that Horn's statements infringed the defendants' religious rights, it is DISMISSED as frivolous.

6. The complaint is to be filed, the summons is to issue, service of the summons and the complaint is to be made upon the defendants by the United States Marshals Service,

---

3. As explained below, I have dismissed as frivolous the claims relating to Horn's statements.

and a copy of this Order is to be directed to all parties.

7. All original pleadings and other papers submitted for consideration to the court in this case are to be filed with the Clerk of this Court. Copies of papers filed in this court are to be served upon counsel for all other parties (or directly on any party acting *pro se*). Service may be by mail. Proof that service has been made is provided by a certificate of service. This certificate should be filed along with the original papers and should show the day and manner of service. An example of a certificate of service by mail follows:

"I, (name), do hereby certify that a true and correct copy of the foregoing (name of pleading or other paper) has been served upon the (name(s) of person(s) served) by placing the same in the U.S. Mail, properly addressed, this (date) day of (month), (year).

_____

(Signature)"

If any pleading or other paper submitted for filing does not include a certificate of service upon the opposing party or counsel for opposing party, it may be disregarded by the court.

8. Any request for court action shall be set forth in a motion, properly filed and served. The parties shall file all motions and all papers relating to motions, including proof of service upon opposing parties, with the Clerk of the Court. All other requirements of the Local and Federal Rules of Civil Procedure are to be followed.

9. The parties shall type or shall *neatly* print all motions and all papers relating to motions that are filed with the Clerk of the Court. Illegible filings may be disregarded by the court.

10. No direct communication is to take place with the court with regard to this case. All relevant information and papers are to be directed to the Clerk of the Court.

11. In the event the summons is returned unexecuted, it is plaintiff's responsibility to ask the Clerk of the Court to issue an alias summons and to provide the Clerk with de-

fendant's correct address so that service can be made.

12. The parties should notify the Clerk's office when there is an address change. Failure to do so could result in court orders or other information not being timely delivered, which could affect the parties' legal rights.