NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2802
_____

TIMOTHY MEL ABUIZ,
                                        Appellant
                    v.

WARDEN WILLIAM BRENNAN; DEPUTY WARDEN NICHOLAS CONIGLIARO;
SUSQUEHANNA COUNTY CORRECTIONAL FACILITY; SUSQUEHANNA
COUNTY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 4:06-cv-1603)
District Judge:  Honorable James F. McClure
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 8, 2011
Before:  SLOVITER, FISHER and WEIS, Circuit Judges.

(Opinion Filed: September 7, 2011)
_____

OPINION
_____

WEIS, Circuit Judge.

        Plaintiff Timothy Abuiz, proceeding pro se, appeals from the District

Court's May 28, 2009, partial grant of summary judgment and its May 27, 2010,

1

judgment following a bench trial. We will affirm.

I.

Abuiz filed this lawsuit in the Middle District of Pennsylvania, based on events that occurred between February and May 2005, when he was incarcerated at Susquehanna County Correctional Facility ("SCCF") in Montrose, Pennsylvania. The complaint, which was construed as an action pursuant to 42 U.S.C. § 1983, named William Brennan (prison warden during the time of the events at issue), Nicholas Conigliaro (then-deputy warden), SCCF, and Susquehanna County as defendants. It alleged unconstitutional conditions of confinement, withheld mail, racial segregation, and denial of access to legal materials.

The facts underlying the case are not in dispute. In February 2005, Abuiz, then a pre-trial detainee, arrived at SCCF and was placed in a general population housing unit. Several weeks later, a number of the cells in Abuiz's unit were flooded by overflowing toilets. Prison authorities attributed the incident to the purposeful actions of several inmates and locked down the facility for approximately 24 hours.

Because Abuiz was believed to be involved with the vandalism and was found with contraband items, he and another suspected inmate were transferred the following day to separate cells in "A" Block, a unit used at times for pretrial and disciplinary detention.

Abuiz advised prison officials that the water pressure in his cell's sink

2

faucet was low, and, as a result, he had no running water for drinking, brushing his teeth, or washing his hands. He also complained that the overhead light in his cell was broken. Despite his requests that prison personnel attend to these problems, they remained unresolved during his time in that cell.

After several weeks in A Block, Abuiz was transferred to a different unit in the Susquehanna County facility and, months later, to another Pennsylvania prison.

In 2006, at the outset of this action, Abuiz filed two motions for appointment of counsel; he made a third attempt in 2007. A magistrate judge denied all three motions after examining the factors set forth in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993). In May 2009, the District Court entered an order dismissing SCCF from the action, granting summary judgment to Susquehanna County on all claims, and granting summary judgment to the prison officials on the claims of withheld mail and denial of access to legal materials.

A bench trial on the remaining claims took place on February 4 and February 8, 2010, with Abuiz -- who by then had been transferred to a prison in New York state -- participating by telephone. On the second day of trial, Abuiz asked once again that counsel be appointed to represent him. The District Court denied that request, observing that "the . . . issue has been reviewed a number of times previously."

After post-trial submissions, the District Court held that the conditions in A Block did not violate the Fourteenth Amendment. The Court also rejected the racial

3

segregation claim, noting that Abuiz had offered no evidence of any policy to segregate minority inmates. Accordingly, judgment was entered for the prison officials.

Abuiz appeals from that judgment and from the earlier grant of summary judgment to Susquehanna County. We review those decisions in that order.[1]

## II.

Abuiz's principal brief lists ten trial-related issues, all of which are linked in one way or another to the issue of whether the District Court abused its discretion in failing to appoint counsel to represent Abuiz.[2]

Several general propositions underlie a decision to appoint counsel in cases of this nature. First, indigent litigants bringing civil suits under § 1983 "have no statutory right to appointed counsel." Tabron, 6 F.3d at 153. Second, a judge has "broad discretion" in determining whether to appoint counsel for such litigants. See id. Where, as here, the relevant facts have been found at trial rather than assumed or subjected to speculation in pretrial proceedings, the District Court is owed a substantial degree of deference in its exercise of discretion. See, e.g., DeJesus v. U.S. Dep't of Veterans Affairs, 479 F.3d 271, 279 (3d Cir. 2007) (on review of bench trial judgment, "findings of

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] We exercise de novo review over questions of law but review findings of fact for clear error. See Bear Mountain Orchards, Inc. v. Mich-Kim, Inc., 623 F.3d 163, 169 (3d Cir. 2010).

fact shall not be set aside unless clearly erroneous[,] and due regard must be given to the trial court's judgments as to the credibility of the witnesses") (internal quotations omitted). Finally, counsel should not be asked or directed to appear on behalf of a party whose case is lacking in factual and legal merit. See Tabron, 6 F.3d at 157 & n.7.

This Court has held that, when deciding whether to appoint counsel, a threshold question is whether the litigant's case has arguable merit in law or fact. If this preliminary showing is met, the following non-exclusive matters should be considered: (1) the plaintiff's ability to present his case; (2) the difficulty of the legal issues; (3) the degree to which factual investigation will be necessary and the plaintiff's ability to pursue it; (4) the plaintiff's ability to retain counsel on his own; (5) the extent to which the case is likely to turn on credibility determinations; and (6) whether the case will require expert testimony. Tabron, 6 F.3d at 155-57.

As the District Court correctly noted in its earlier denials of the plaintiff's motions for appointment of counsel, the Tabron opinion describes an inquiry as to whether the underlying claims have arguable factual and legal merit. The record here demonstrates that Abuiz's claims were lacking.

The cell conditions described at trial may have been bothersome and disagreeable. But, as Abuiz testified, while housed in A Block he was given three meals a day and drinking water with his meals. After his first week-and-a-half in that unit, he was also provided a gallon jug of potable water daily, along with juice and Kool-Aid. He

5

was permitted to leave his cell daily to shower[3] and shave and was given regular opportunities for exercise and recreation.

He had sufficient light from his cell window and light fixtures in adjoining areas to read and write when he sat near the front of his cell. Despite some inconvenience, he was able to draft letters, complete forms, and work on puzzles. He was not kept in darkness.

These conditions, while irksome, were far removed from the type of "genuine privation[ ] and hardship over an extended period of time" that is necessary for a finding of constitutional deprivation. See, e.g., Bell v. Wolfish, 441 U.S. 520, 542 (1979); compare Ford v. Bd. of Managers of New Jersey State Prison, 407 F.2d 937, 940 (3d Cir. 1969) (conditions of solitary confinement, including limited food and lack of running water, did not "even remotely approximate the barbaric conditions found to" violate constitutional standards) (Eighth Amendment case). Abuiz's underlying claims lack arguable merit in fact and law and thus do not survive the threshold Tabron inquiry.[4]

Even if that hurdle had been surmounted, the remaining Tabron considerations do not support appointment of counsel in this case. A thorough review of

---

[3] During his first week-and-a-half in A Block, Abuiz was permitted to leave his cell six times to shower but twice refused to do so.

[4] Moreover, no evidence at trial, apart from the plaintiff's bald assertion, supported the notion that prisoners were segregated based on race or skin color. For that reason, Abuiz's Equal Protection claim fails the "arguably meritorious" test.

the trial transcript demonstrates that Abuiz was capable of setting forth his claims and did so adequately. The factual and legal issues tied to the claims were straightforward and not overly complex; they were not dependent on in-depth factual investigation, but instead were primarily based on personal observations made by Abuiz himself. A lawyer was not required to explain an allegedly inadequate supply of running water or a faulty light fixture.

There is, moreover, no indication in the record that Abuiz's "education, literacy, prior work experience, . . . . [or] ability to understand English" hampered his ability to present his case. Compare Tabron, 6 F.3d at 156 (discussing cases). To the contrary, Abuiz testified at length in support of his position, cross-examined the witnesses, made and argued objections, and even preserved issues for appeal.

That Abuiz presented his case by telephone was not ideal; however, it proved to be a satisfactory alternative under the circumstances. Neither the prison authorities of the State of New York (where he was being held at the time of trial) nor the U.S. Marshals Service were able to transport Abuiz to Pennsylvania. Although the district judge had tried to arrange for the trial to proceed via videoconference, the New York authorities were either unable or unwilling to comply with that request.

The record does not demonstrate that Abuiz's inability to appear in person substantially altered the presentation of his case, much less the outcome of the trial. Abuiz had been provided a number of documents before the trial, and he discussed others

7

during the trial itself.[5]  The transcript reveals that Abuiz was heard and understood by the judge, defense counsel, and testifying witnesses, all of whom were courteous and professional, mindful of the less-than-perfect circumstances under which plaintiff was participating.  Indeed, the Court gave this pro se litigant significant leeway to argue issues and pursue lines of questioning that might well have been foreclosed to an attorney appearing on his behalf.

Finally, the trial did not depend a great deal on witness credibility.  Based on the District Court's opinion, it appears that expert testimony, though potentially helpful in fleshing out a damages claim, was not necessary to establish either a claim of racial segregation or the conditions of confinement in his A Block cell.

District judges maintain "broad discretion to determine whether appointment of counsel is warranted, and th[at] determination must be made on a case-by-case basis." Tabron, 6 F.3d at 157-58.  Under the circumstances presented here, we conclude that the District Court's denial of the motions to appoint counsel was not an abuse of that discretion.

Indeed, to find an abuse here would violate what we and other courts have said on several occasions: that, given the scarcity of lawyers willing to take on pro bono

---

[5] While Abuiz claims that he requested subpoenas from the court for three witnesses, the District Court said it never received the request and, in any event, the record shows that Abuiz was able to obtain a fair amount of information during discovery.

cases, courts should not seek to impose upon the bar representation in legal actions of little or no merit. See id. at 157 ("[E]very assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste") (quoting Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989)).

Accordingly, we affirm the District Court's denial of the plaintiff's motion to appoint counsel. In addition, after careful review of the record, we find no merit to the remaining trial-related issues Abuiz raises in this appeal, and we likewise affirm those rulings.

### III.

Abuiz also challenges the District Court's grant of summary judgment to defendant Susquehanna County.[6] "[A] municipality may be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice." Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006). For municipal liability to attach, there "must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation . . . .'" Jiminez v. All Am. Rathskeller,

---

[6] We exercise plenary review over that decision, and use the same standard applied by the District Court. See Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 267 (3d Cir. 2010).

Inc., 503 F.3d 247, 249 (3d Cir. 2007) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

For substantially the reasons given by the District Court, we agree that Abuiz failed to establish any genuine issues of material fact regarding municipal liability. Although Abuiz alleged that Susquehanna County had a policy of not adequately training prison staff and of taking disciplinary action against prisoners even for actions allowed under the prison's handbook, he never came forward with evidence linking those alleged policies to his asserted injuries.

Abuiz also asserts that if he had been able to present newly discovered evidence, the evidence would have overcome the prison's motion for summary judgment. This evidence, a February 15, 2005 letter from the Susquehanna County Jail Board to the Pennsylvania Department of Corrections, apparently was never properly presented to the District Court for consideration. Even if we could take the letter into account, it would not aid Abuiz in his argument. None of the deficiencies related to the prison facility outlined in the letter reflect an official policy of misconduct, and there is also no causal link between any of the deficiencies and the alleged constitutional deprivations in Abuiz's case. Accordingly, we hold that the District Court properly granted summary judgment to Susquehanna County.

The judgments entered by the District Court will be affirmed.

10