NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3445
_____

BOBBIE LEE SIMS, JR.,
                                        Appellant

v.

SUPERINTENDENT JOSEPH PIAZZA;
ROBERT McMILLIAN, Deputy Superintendent for Facility Management;
DAVID VARANO, Deputy Supt. Now, Superintendent;
DAVID McANNANEY, Major of Guards;
JOSEPH MUSHINSKI, Major Unit Managers;
UNIT MANAGER LARRY KASKIE;
MICHAEL MILLER, Intelligence Captain;
JEFFREY A. BEARD, Secretary of Department of Corrections;
CINDY WATSON, Chief Grievance Officer;
KATHRYN McCARTY, Corrections Health Care Administrator;
DEPUTY SUPERINTENDENT RONDA ELLETT;
CAPTAIN OF SECURITY EDDIE BAUMBACK;
SECURITY LT. R. E. LONG;
SECURITY TEAM RICHARD McMILLIAN;
SECRECTARY OF CORRECT KANDIS K. DASCANIS;
DORINA VARNER, Acting Grievance Officer
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 09-cv-00033)
District Judge:  Honorable Edwin M. Kosik
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 8, 2012
Before:  SCIRICA, GREENAWAY, JR., and VAN ANTWERPEN, Circuit Judges

(Filed February 22, 2012)

_____

PER CURIAM.

In his amended complaint pursuant to 42 U.S.C. § 1983, Bobbie Lee Sims, Jr., sued correctional officers and officials associated with SCI-Coal Township. Seeking relief for alleged cruel and unusual punishment, he claimed that after his transfer to the prison he began to experience sleeping and other problems (headaches, dry and burning eyes, mood swings, an inability to concentrate, confused memory, and exacerbation and worsening control of his diabetes and high blood pressure) because of the nighttime security system (or "red light system") in place at the prison. Under the red light system, the main lights are turned off at 10:00 PM, and red lights are used to illuminate the prison cells between 10:00 PM and 6:00 AM.

In addition to trying to physically block the red light by putting towels and socks over his head, Sims raised his concerns about the red lights informally with several of the defendants, his psychologist, and his psychiatrist, and filed grievances, which were denied. He sued the defendants for failing to properly redress his grievances.

Sims also alleged that he did not get treatment for his diabetes and high blood pressure for five days during April 2008. During that time, Plaintiff was taking a number of medications, some of which were administered three times per day. Plaintiff admits that the prison staff provided him with insulin during this period to lower his risk of diabetic coma. Despite being given reassurances that a lapse in his medication would not

happen again, Sims again did not get his medication from September 25, 2008, until September 30, 2008, apparently after some prescriptions expired.

Sims also brought suit relating to the allegedly retaliatory confiscation of seven pairs of his prescription eyeglasses and disposal of a bottle of lotion. He contended that he was being retaliated against for filing a successful grievance that resulted in him getting items confiscated in an earlier cell search returned to him and getting compensation for an item destroyed after an earlier cell search.

He also submitted a retaliation claim based on his loss of his prison food services job. From April 2008 until February 26, 2009, Sims worked the prison's dietary department. During this time, he became convinced that prison staff were getting special side dishes that were unavailable to inmates and noticed shortfalls of stock which he attributed to theft. In addition to raising this concern with several of the defendants, he wrote letters to the IRS, the FBI, the Auditor General's Office, and a state representative, requesting an independent investigation regarding the potential misappropriation of tax dollars. According to his complaint, after he lost his job, defendants initially told that he was being terminated without cause, but subsequently one of the defendants told him, "I was ordered by my superiors to remove you from dietary. [Y]ou should be more mindful as to who you write requesting investigations and complaining about how good staff eats."

3

Screening the complaint pursuant 28 U.S.C. § 1915(e)(2)(B), the District Court[1] dismissed the complaint against one defendant because the claims against him were based on an inactionable theory of respondeat-superior liability and against another defendant because, although she was named as a defendant, Sims levied no allegations against her. The District Court also held that Sims failed to state a claim upon which relief could be granted as to all the claims but the claim of cruel and unusual punishment relating to the red light system. Subsequently, the remaining defendants filed a motion for summary judgment on the claim about the red light system, which the District Court granted. In the course of the litigation, the District Court also denied Sims's motion for appointment of counsel, motions to compel discovery, including a motion to compel the release of his medical files, and motion to file a supplemental pleading. Sims appeals.[2]

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the order dismissing the claims, see Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000), and the order granting summary judgment, see Abramson v. William Patterson College, 260 F.3d 265, 276 (3d Cir. 2001). We review for abuse of discretion the denial of motions for the appointment of counsel, to compel discovery, and to file a supplemental pleading under Rule 15 of the Federal Rules of Civil Procedure. See Tabron v. Grace, 6 F.3d 147, 155 n.4 (3d Cir. 1993); Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 281 (3d Cir. 2010) (explaining also that a discovery order will not

[1] For this decision and the District Court's subsequent ruling on Sims's claims, the Magistrate Judge first entered a decision, which the District Court adopted over Sims's objections in the course of issuing its own opinions.
[2] He also files a motion for an extension of time to file a reply brief, which we grant.

4

be disturbed "absent a showing of actual and substantial prejudice"); Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008).

In large part, we will affirm the District Court's judgment. First, although Sims contests the matter strongly in his brief, the District Court was correct to dismiss defendant Beard for lack of personal involvement. Liability under § 1983 cannot be premised on the theory of respondeat superior that Sims relied on in his allegations. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). The District Court also did not err in dismissing the complaint as to defendant Watson, because although Sims listed her in relation to one of his claims, he did not lodge specific allegations against her.

Also, to the extent that Sims raised claims based on his dissatisfaction with the grievance procedure, his claims were properly dismissed, for, as the District Court explained, Sims does not have a constitutionally protected right to a grievance procedure. See, e.g., Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases); McGuire v. Forr, No. 94-6884, 1996 U.S. Dist. LEXIS 3418, *2 n.1 (E.D. Pa. Mar. 21, 1996), aff'd 101 F.3d 691 (3d Cir. 1996).

The District Court also did not err in dismissing Sims's claims of cruel and unusual punishment based on two separate occasions when he did not receive his medication for five days. The Eighth Amendment mandates that prisoners receive access to basic medical treatment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). In order for a prisoner to state a claim under § 1983 for the denial of medical care, he must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

5

medical needs." Id. at 106. In this case, although Sims described two periods of time when he was without his medication, he also noted the regimen of medicine that the prison ordinarily provided, the compensatory steps taken when he was without his usual medications (extra insulin was provided to lower his risk of a diabetic coma), and the prompt correction of the problem. He also did not allege that he suffered serious harm from the disruption of his medication schedule. Under the circumstances that he described, he did not state a claim of cruel and unusual punishment.

The District Court also properly granted summary judgment on Sims's other claim of cruel and unusual punishment. First, judgment in favor of defendant McCarty was proper based on Sims's concession that McCarty had no involvement in the matter. But, also, as to all of the defendants named in relation to his claim based on the red light system, the District Court properly granted summary judgment based on the undisputed facts of this case. "[T]he Eighth Amendment prohibits punishments which . . . involve the unnecessary and wanton infliction of pain, . . . or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (internal citations and quotations omitted). Included among unnecessary and wanton inflictions of pain are those punishments completely without penological justification. Id. Courts have held that causing inmates to suffer physical and psychological harm by living in constant illumination is without penological justification. See, e.g., Keenan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir. 1996) (considering a claim from a prisoner who suffered grave sleeping and other problems because of large florescent lights directly in front of and behind his cell that constantly illuminated his cell 24 hours a day in such a way that he could not

6

distinguish day from night).  However, courts also have concluded that security lights that are similar to night lights and that provide only enough light for officers to conduct nighttime security checks do not impinge on a prisoner's constitutional rights.  See, e.g., Wills v. Terhune, 404 F. Supp. 2d 1226, 1231 (E.D. Cal. 2005); King v. Frank, 371 F. Supp. 2d 977, 985 (W.D. Wis. 2005) (rejecting a claim based on light from a 9-watt bulb that allowed correctional officers to see prisoners at night).  Continuous lighting has been held to be permissible and reasonable in the face of legitimate penological justifications, like the need for security and the need to monitor prisoners.  See O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987); see generally Turner v. Safley, 482 U.S. 78, 89 (1987).

In this case, it was undisputed that the light at issue is a 5-watt light bulb, which provides minimal illumination.  Furthermore, the defendants presented evidence that the red light is used at night for safety and security needs.  Specifically, they explained that the red light provides illumination for officers to see the structure of the cell, to identify inmates in their cells, to make sure that inmates were not harming themselves or others, and to allow inmates to safely use the toilet in their cells at night.  Although Sims argued that flashlights should be used instead, in light of the deference given to prison officials to set policies to maintain security, Bell v. Wolfish, 441 U.S. 520, 547-48 (1979), and the explanation given for the choice of the red light, the defendants provided a legitimate penological justification for the policy.  Furthermore, although the medical records that Sims submitted showed that he attributed his psychological and physical ailments to the

7

red light, they do not back up his allegations that the red light was the cause of his problems (they do show, however, that he received regular care).

The remaining claims are Sims's claims of retaliation. Some government actions, not unconstitutional in and of themselves, may be constitutional torts if motivated in substantial part by a desire to retaliate for the exercise of a constitutional right. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). To prove retaliation, a prisoner must show that he engaged in constitutionally protected conduct, that he suffered "adverse action" at the hands of prison officials such that a person of ordinary firmness would be deterred from exercising his rights, and that his conduct was a substantial or motivating factor for the adverse action. See id. at 333-34.

The District Court properly concluded that pouring lotion down a toilet and confiscating some of Sims's eyeglasses would not deter a person of ordinary firmness from exercising his rights, assuming the acts were retaliation for filing grievances. Accordingly, the dismissal of that retaliation claim was proper.

However, the termination of prison employment is a sufficient deterrent to meet the pleading standard for a retaliation claim.[3] See Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991). The District Court rejected it as insufficient because a prisoner does not have an independent liberty interest in prison employment. See James v. Quinlan, 866 F.2d 627, 630 (3d Cir. 1989). However, prisoners need not have an independent liberty interest in the privilege denied in retaliation for the exercise of a constitutional right. See

---

[3] For reasons that are unclear to us, the defendants did not address this aspect of Sims's retaliation claim, despite our order (entered October 24, 2011) directing them to do so.

8

Rauser, 241 F.3d at 333. Furthermore, the activities that Sims allegedly engaged in, reporting thefts and the misuse of public funds to authorities, were an exercise of his right to free speech. Cf. Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003) (describing protected speech involving matters of public concern in relation to public employees' free speech rights). He met the last part of the test when he alleged that a defendant told him essentially that he was fired for writing letters and seeking investigations. Accordingly, he stated a claim for retaliation that should not have been dismissed on screening.

For the reasons given in the discussion above, we will vacate the District Court's decision to the extent that it dismissed Sims's First Amendment retaliation claim based on his allegations relating to the loss of his prison employment. The matter is remanded to the District Court for further proceedings consistent with this opinion. In all other respects, we will affirm the District Court's decision.[4] For the reasons given above, the District Court's orders dismissing Sims's other claims and granting summary judgment in favor of the defendants were proper. The District Court also did not abuse its discretion in denying Sims's motion for appointment of counsel, see Tabron, 6 F.3d at 155-56, Sims's motions to compel discovery, or his motion to file a supplemental pleading that he filed after the close of the discovery period and the entry of the Magistrate Judge's report and recommendation on the defendants' summary judgment motion.

---

[4] Also, as we noted above, we grant Sims's motion for a extension of time to file a reply brief. However, we reject as baseless Sims's claim, raised in his reply brief, that the District Court Judge was biased.

9