**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2037
_____

SAMUEL K. AMFOSAKYI,
                                        Appellant

v.

FRITO LAY, INC.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 11-cv-00651)
Chief District Judge: Honorable Yvette Kane

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 12, 2012
Before:   SCIRICA, GREENAWAY, JR. AND VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  September 7, 2012)
_____

OPINION
_____

PER CURIAM

        Appellant Samuel Amfosakyi appeals from an order of the District Court granting

the defendant's motion for summary judgment and motion for sanctions, and two orders

of the Magistrate Judge.  For the following reasons, we will affirm.

Amfosakyi, a United States citizen who was born in Ghana, was employed by defendant Frito Lay, Inc. at its plant in York, Pennsylvania from February 7, 2005 until he was terminated on July 8, 2009. On July 4, 2009, Amfosakyi arrived for his overnight shift at approximately 7:00 p.m. At 9:00 p.m., he left the plant without permission, did not "clock out," and was absent from the plant for approximately 4½ hours, until he returned sometime around 1:30 a.m. on July 5. Upon his return, he was confronted by a supervisor, and falsely stated that he had been in the facility all evening, except for 30 or so minutes when he left the plant to get something to eat. Amfosakyi was presented with a written statement, stating that he had left the Frito Lay plant at approximately 9:00 p.m. and had returned at approximately 1:00 a.m. Amfosakyi would sign only a revised statement, which falsely asserted that he had only been away from work from 10:30 p.m. to 11:05 p.m.

Frito Lay supervisors sent Amfosakyi home and told him not to report for work the following day. After an inquiry, Michele L. Bass, a Frito Lay Manufacturing Manager, determined that Amfosakyi had, in fact, left the plant on July 4 for over four hours without permission while he remained on the clock, and then lied about it. Lying is a violation of the Frito Lay Code of Conduct. On this basis, and given his history,[1] Bass decided to terminate Amfosakyi, a decision which was communicated to him by letter on July 8, 2009.

---

[1] Prior to the July 4 incident, Amfosakyi was cited on a number of occasions for absenteeism and unacceptable lapses in attendance, and, at one time, these attendance issues caused Frito Lay to place him on the final step of the company's progressive discipline process.

After pursuing administrative remedies, Amfosakyi filed suit in the United States District Court for the Middle District of Pennsylvania, claiming that Frito Lay, in terminating him, discriminated against him on the basis of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951. The parties engaged in discovery and exchanged interrogatories and documents, and Frito Lay deposed Amfosakyi. As part of his discrimination claim, Amfosakyi asserted that he left work on July 4 without an excuse because of a medical emergency relating to his severely depressed son. He also claimed that he had previously notified Frito Lay in writing of his son's special needs. To support this claim, Amfosakyi produced in discovery a typewritten letter dated April 30, 2009, and addressed to a Frito Lay Human Resources employee, Danielle Fritts, which described his son's severe medical condition and needs.

At his deposition, Amfosakyi was questioned about this typewritten letter, and he testified under oath that the letter was prepared and submitted to Ms. Fritts on April 30, 2009, the date on the typewritten letter. Frito Lay had no record of ever receiving this letter, and the addressee on the letter, Danielle Fritts, had not taken and did not use the last name "Fritts" on April 30, 2009. She later married and took the name "Fritts," but on April 30, 2009 her name was "Shultz." Frito Lay asked Amfosakyi for permission to conduct a forensic examination of his computer. Amfosakyi appeared to agree but then repeatedly sought to reschedule and/or postpone the forensic examination.

Frito Lay obtained leave of court to conduct an examination of Amfosakyi's Dell Inspiron 531S desktop computer. That examination took place on October 18, 2011 at

3

his home. Verified master and working copy bitstream images of his computer were captured via a write blocking device, using the ImageMASSter Solo III forensic hardware imaging device. EnCase forensic software utilities then were used to investigate the working copy bitstream images. A file titled "frito lay 2.docx" contained content identical to the April 30, 2009 letter. The Microsoft Windows Operating System metadata and Microsoft Word internal metadata showed that the file was created and last written to on August 1, 2010, fifteen months after the date set forth on the hard copy of the letter.

With the forensic investigation of his computer irrefutably establishing that Amfosakyi did not create the April 30, 2009 "Fritts" letter until months after he had commenced his Title VII action, Frito Lay filed a motion for sanctions, Fed. R. Civ. Pro. 37, seeking dismissal with prejudice based on Amfosakyi's having submitted a falsified document through discovery and having provided false testimony during his deposition, see Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863 (3d Cir. 1984). In essence, Frito Lay argued that Amfosakyi submitted the falsified letter in discovery to show that, prior to July 4, 2009, he had communicated to Human Resources a family medical emergency need for a flexible work schedule, apparently surmising that a medical excuse would discredit Frito Lay's termination decision. Frito Lay argued that a sanction less severe than dismissal with prejudice would not sufficiently address the gravity of Amfosakyi's improper attempt to influence the outcome of the case, the prejudice suffered by Frito Lay, and the damage done to the integrity of the federal judicial system resulting from his conduct.

Frito Lay also moved for summary judgment, Fed. R. Civ. Pro. 56(a), arguing that Amfosakyi had not made out a prima facie case of discrimination because the circumstances of his termination did not give rise to an inference of unlawful discrimination. There was no evidence that race or national origin had anything to do with the decision to terminate Amfosakyi. And even if he could make out a prima facie case, Frito Lay had articulated a legitimate, nondiscriminatory reason for his termination, which he had not rebutted. Frito Lay noted Amfosakyi's argument that a white employee, George Rye, had once lied to Frito Lay and was not terminated, but Frito Lay argued that Rye and Amfosakyi were not similarly situated, because Rye never left the plant without permission while still on the clock, and never lied repeatedly about his actions after being found missing from the plant.

After Amfosakyi submitted a response in opposition to Frito Lay's motion for sanctions, the Magistrate Judge held a hearing on the motion. Amfosakyi's defense to the motion for sanctions was that he began using Danielle Fritts' married name before her wedding because he was aware of her marriage plans. He also asserted that he had actually sent a handwritten letter to her on April 30, 2009, and then created the typewritten version – which he later represented as the original letter – in August of 2010 in order to "preserve" the hand-written evidence. Amfosakyi also responded in opposition to the motion for summary judgment, reiterating his contention that he was similarly situated to George Rye, who had lied to Frito Lay but was not terminated.

The Magistrate Judge then filed his Report and Recommendation. Addressing the sanctions motion first, the Magistrate Judge considered Amfosakyi's defense but found

5

his explanations implausible because Frito Lay had no record of receiving the April 30, 2009 letter in any format, typewritten or handwritten; the alleged handwritten letter, like its typewritten progeny, was addressed to Danielle "Fritts" who did not go by that name until after April 30, 2009; and his current explanation did not account for his deposition testimony that he had created the typewritten letter on April 30, 2009. The Magistrate Judge recommended dismissal of the complaint with prejudice after balancing the Poulis factors.

The Magistrate Judge also recommended granting Frito Lay's motion for summary judgment, concluding that Amfosakyi could not make out a prima facie case for discrimination because his termination did not occur under circumstances giving rise to an inference of discrimination. In addition, his claim of disparate treatment was unavailing because he and George Rye were not similarly situated.[2] Furthermore, even if Amfosakyi had made out a prima facie case for discrimination, Frito Lay had amply articulated a legitimate reason for terminating him.

In his written Objections, Amfosakyi argued that the sanction of dismissal was not appropriate. In addition, he noted that he also had filed a motion for sanctions, even before Frito Lay filed its motion, alleging that Frito Lay had wrongfully withheld discovery. He complained that the Magistrate Judge unfairly denied his sanctions motion, and he argued that the Magistrate Judge was biased. In support of this claim, he

---

[2] In 2006, Rye wrote a memorandum in the nature of an incident report in which he stated that Amfosakyi had caused a pallet jack to strike his (Rye's) foot. Amfosakyi contended that Rye had not been injured and thus the report was false. An investigation by Frito Lay into this incident was inconclusive and neither Rye nor Amfosakyi was disciplined. Rye declined medical attention and was back at work the next day.

argued that the Magistrate Judge overlooked two of his exhibits: one, a letter to him, dated August 19, 2010, from Christine Jones of the state Human Relations Commission, in which she stated that Frito Lay told her that, regarding the pallet incident, it had no knowledge of George Rye making a complaint about a specific individual; and two, a hand-written statement by George Rye, dated September 13, 2006, in which Rye plainly stated that "Sam," his team member, hit his foot with the power pallet jack. These two items, Amfosakyi contended, could not be reconciled, and thus "this statement document of George Rye was a fabrication as it was back-dated, otherwise, [Frito Lay] would not have denied having knowledge about George Rye making a complaint about a specific individual…" See Objections, at 4. With respect to the merits of his claim of discrimination, Amfosakyi reiterated that George Rye, a white ex-employee, had also violated Frito Lay's code of conduct by triggering a deceitful injury investigation in 2006, and Rye was not terminated for this deceitful conduct. In addition, Amfosakyi argued that Frito Lay had tampered with evidence relating to the Rye investigation, and tampered with other evidence by using "white-out."

In an order entered on March 19, 2012, the District Court overruled the objections, adopted the Report and Recommendation, and granted Frito Lay's motion for summary judgment and motion for sanctions. With respect to the motion for summary judgment, the District Court reasoned that Amfosakyi had no evidence to show that Frito Lay considered his race or national origin in any way when it terminated his employment over the July 4, 2009 incident. Amfosakyi failed to cast doubt on Frito Lay's proffered reasons for terminating him, and his argument concerning George Rye did not change the

7

fact that he had left work, while on the clock, for over four hours without permission, lied to his supervisors more than once regarding his absence, and signed a false statement regarding his absence. The District Court held that, absent some basis to disbelieve Frito Lay's proffered nondiscriminatory reason for terminating his employment, Amfosakyi did not meet his burden to show pretext.

Noting that its decision to grant summary judgment to Frito Lay on the merits rendered Frito Lay's motion for sanctions seeking dismissal on the basis of litigation misconduct effectively moot, the District Court nevertheless addressed Amfosakyi's objections to dismissal as a sanction. The court first noted that it could not address Amfosakyi's objections addressing the denial of his own motion for sanctions because that motion (having already been disposed of by the Magistrate Judge) was not addressed in the Report and Recommendation. The District Court noted that it was limited to reviewing the proposed findings and recommendations included in the Magistrate Judge's report. See 28 U.S.C. § 636(b)(1)(C). With respect to Amfosakyi's objection relating to alleged bias on the part of the Magistrate Judge, the District Court concluded that the Magistrate Judge's findings and recommendations were the result of sound legal analysis, and not personal animus towards Amfosakyi. Last, the District Court stated that it was sympathetic to the challenges faced by pro se litigants, but, because the evidence established that Amfosakyi fabricated a letter during discovery and testified falsely regarding this fabrication, dismissal as a sanction was indeed appropriate.

Amfosakyi appeals. We have jurisdiction under 28 U.S.C. § 1291. We review a District Court's grant of summary judgment de novo. Alcoa, Inc. v. United States, 509

8

F.3d 173, 175 (3d Cir. 2007). Summary judgment is proper where there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In his Informal Brief, Amfosakyi has reiterated his litigation misconduct charges against Frito Lay, and reiterated his argument that George Rye is similarly situated to him. He argues that the Magistrate Judge's orders denying his motion for sanctions and motion for reconsideration were an abuse of discretion, and that the December 5, 2011 sanctions hearing conducted by the Magistrate Judge should have addressed his discovery concerns and not just those of Frito Lay. In addition, he has repeated his argument that the Magistrate Judge was biased, noting that the Report and Recommendation was sarcastic, scornful, and overly personal.

We begin, as did the District Court, with Frito Lay's motion for summary judgment and Amfosakyi's claim of a discriminatory termination.[3] Summary judgment was proper for the reasons given by the District Court, because there was an insufficient evidentiary basis on which a reasonable jury could find in Amfosakyi's favor on any of

---

[3] Frito Lay has argued that we lack jurisdiction over the District Court's orders granting its motion for summary judgment and motion for sanctions because Amfosakyi waived any issues relating to these orders by neglecting to specifically identify them in his notice of appeal or address them in his Informal Brief. See Appellee's Brief, at 3-4, 18-19. We disagree. We are satisfied that Amfosakyi emphasized his allegations of litigation misconduct on Frito Lay's part in order to show that it was difficult for him to oppose summary judgment, particularly with respect to his allegation of disparate treatment, cf. Fed. R. Civ. Pro. 56(d) (nonmovant may show that "for specified reasons, it cannot present facts essential to justify its opposition"), and to persuade us that, if we agreed with him that both parties had engaged in litigation misconduct, the sanction of dismissal was too extreme. See generally Tabron v. Grace, 6 F.3d 147, 153 n.2 (3d Cir. 1993) (construing pro se notice of appeal liberally as covering unspecified orders if they are related to specific order from which party appeals).

9

his claims.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).  There was no triable issue because Amfosakyi could not show that Frito Lay's reason for terminating him was a pretext for discrimination.  <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981) (if plaintiff establishes prima facie case of discrimination, burden shifts to employer to articulate legitimate nondiscriminatory reason for its actions).

To survive a motion for summary judgment, a plaintiff may prevail either by discrediting the employer's proffered reasons or by showing that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.  <u>See</u> <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994).  "To discredit the employer's proffered reason … the plaintiff cannot simply show that the employer's decision was wrong or mistaken….   Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence."  <u>Id.</u> at 765.  A plaintiff may support an assertion that an invidious discriminatory reason was more likely than not a motivating cause by showing that "the employer has treated more favorably similarly situated persons not within the protected class."  <u>Jones v. School Dist. of Philadelphia</u>, 198 F.3d 403, 413 (3d Cir. 1999).

Assuming arguendo that a prima facie case of discrimination was made out, the District Court properly determined that there was no triable issue with respect to whether Amfosakyi had cast doubt on the legitimacy of Frito Lay's decision to terminate him or whether he had provided evidence of discrimination.  <u>See</u> <u>St. Mary's Honor Center v.</u>

10

Hicks, 509 U.S. 502, 509-11 (1993). Amfosakyi left work while on the clock for over four hours without permission, lied to his supervisors regarding his absence, and signed a false statement regarding his absence. It does not appear that Amfosakyi truly disputed this in his deposition testimony. With respect to his efforts to show that the circumstances surrounding the treatment of George Rye, his sole comparator, give rise to an inference of discrimination, as the District Court noted, unlike the investigation into Amfosakyi's statements about his whereabouts, which conclusively established that he had lied in violation of Frito Lay's Code of Conduct, the investigation regarding Rye and the truthfulness of his incident/injury report was inconclusive. To prove disparate treatment, a plaintiff must show that a comparator employee was similarly situated to him in all relevant respects, see Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997), including whether the comparator employee had "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his] conduct or the employer's treatment of [him]," Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000). Here, there really was no comparison to be made, and, accordingly, summary judgment for Frito Lay on the claim of discrimination was proper, Celotex Corp., 477 U.S. at 322.

The District Court also, in the alternative, properly granted Frito Lay's motion for the sanction of dismissal. See Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002) (decision to dismiss civil action as sanction for misconduct reviewed for abuse of discretion). In Poulis, 747 F.2d 863, we directed district courts to balance six factors in determining whether a dismissal with prejudice is an appropriate sanction. Those six

11

factors include: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the conduct at issue; (3) a history of dilatoriness; (4) whether the conduct of the party was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Id. at 868. Not every factor must weigh in favor of dismissal so long as most do. See, e.g., Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 696 (3d Cir. 1988).

The Magistrate Judge fully addressed the law applicable to the sanction of dismissal, and the District Court fully considered the parties' motions and responses, and the transcript of the December 5, 2011 hearing. We agree with the District Court that the record conclusively establishes that Amfosakyi falsified a document produced in discovery that was material to his claim of discrimination, and then testified falsely in his deposition regarding that document. Simply put, a litigant who provides false documentation and/or untruthful testimony during the course of discovery in an improper attempt to influence the outcome of the civil action may be prohibited by the District Court, pursuant to Poulis and Rule 37, from proceeding with the civil action. See Derzack v. County of Allegheny, Pa., 173 F.R.D. 400 (W.D. Pa. 1996). The record establishes that Amfosakyi had a full and fair opportunity to respond to Frito Lay's motion for sanctions, and that the Magistrate Judge's findings and recommendations were the result of sound legal analysis and not personal bias. Accordingly, the District Court did not abuse its discretion in granting Frito Lay's motion for sanctions.

We further conclude that the Magistrate Judge did not abuse his discretion by denying Amfosakyi's motion for sanctions and subsequent motion for reconsideration. See Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1310 (3d Cir. 1995) (discovery orders reviewed for abuse of discretion).[4] The Magistrate Judge denied Amfosakyi's motion for sanctions on November 17, 2011, prior to the submission of his Report and Recommendation. Amfosakyi had asked Frito Lay to produce George Rye's attendance records for 2006 and all records relating to his termination in 2011, and he had asked to physically inspect the originals of certain documents that Frito Lay had already produced. The Magistrate Judge initially ordered Frito Lay to produce the 2006 attendance records, to produce all records relating to George Rye's termination for an *in camera* inspection, and to permit Amfosakyi to physically inspect records.

Frito Lay complied with the Magistrate Judge's order except that it could not produce George Rye's 2006 attendance records because they could not be located. The Magistrate Judge reviewed George Rye's termination records *in camera* and determined

---

[4] A party ordinarily waives his challenge to a Magistrate Judge's pretrial order by failing to appeal it to the District Judge. See Continental Casualty Co. v. Dominick D'Andrea, Inc., 150 F.3d 245, 256 (3d Cir. 1998). Here, instead of timely appealing the Magistrate Judge's orders denying his motion for sanctions and motion for reconsideration to the District Judge, 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."), Amfosakyi complained about the orders in his Objections to the Report and Recommendation. That is not the procedure contemplated by the statute or Local Rules 72.2 and 72.3. Nevertheless, the decision whether to address a pretrial issue not raised before the District Judge is one of discretion rather than jurisdiction. See Tabron, 6 F.3d at 153. We will forgive the failure to comply with the technical rules of procedure and address the Magistrate Judge's orders because the parties have briefed the issues, Frito Lay does not raise waiver as a defense, and the issue of his Amfosakyi's sanctions motion is intertwined with the summary judgment issues and the issue of Frito Lay's sanction motion, see id.

that his termination in 2011 was wholly unrelated to Amfosakyi's case and thus his termination records did not have to be produced to Amfosakyi. In addition, although Amfosakyi had complained that certain documents produced for inspection were not originals because they contained "fax" information, and that two documents had been altered by "white-out," Frito-Lay had convincingly responded that the documents produced were in fact originals and that it had made no "white-out" alterations. Accordingly, the Magistrate Judge denied Amfosakyi's motion for sanctions. The Magistrate Judge then denied a motion for reconsideration, emphasizing that he could not make Frito Lay produce George Rye's 2006 attendance records if they did not exist.

In his Informal Brief, Amfosakyi has argued that the Magistrate Judge's orders denying his motion for sanctions and motion for reconsideration were an abuse of discretion, and that the December 5, 2011 sanctions hearing conducted by the Magistrate Judge should have addressed his discovery concerns and not just those of Frito Lay. As to the latter contention, we note that Amfosakyi's motion for sanctions had already been denied by the time of the December 5, 2011 hearing on Frito Lay's sanctions motion. As to the merits of his sanctions motion, after careful review of all of the parties' submissions, it does not appear to us that any of Amfosakyi's "observations" concerning the significance of the documents Frito Lay produced in discovery, raise questions about whether Frito Lay engaged in litigation misconduct. For example, Amfosakyi complained that, if Rye's 2006 attendance records could not be located, an interrogatory answer by Frito Lay -- that there was no record of George Rye's having missed any work in September, 2006 -- must be false, but Frito Lay clarified that its answer to an

14

interrogatory concerning whether George Rye had missed work in September, 2006 due to an injury was based, not on the 2006 attendance records, but on a Workers' Compensation Report and an OSHA Log.

In short, nothing in the record indicates that Frito Lay destroyed or altered any records, or made any conscious or intentional misstatements in discovery. The significance of the discrepancy between Amfosakyi's letter from Christine Jones of the Pennsylvania Human Relations Commission and George Rye's handwritten report dated September 13, 2006 concerning whether Frito Lay had knowledge of Rye making a complaint about a specific individual is not readily apparent, contrary to Amfosakyi's assertions. Moreover, Frito Lay has provided an explanation for the discrepancy in its brief on appeal, see Appellee's Brief. At the summary judgment stage, Amfosakyi was required to go beyond his allegations, and by affidavits, depositions, answers to interrogatories, and admissions designate specific facts showing that there was a genuine issue for trial. Celotex Corp., 477 U.S. at 324; Fed. R. Civ. Pro. 56(c)(1)(A). If he suspected that the discrepancy was relevant to his claim of disparate treatment, he should have considered deposing a few company witnesses, or otherwise further investigating the discrepancy. See generally N.Y. State Nat'l Organization for Women v. Pataki, 261 F.3d 156, 166 (2d Cir. 2001) ("plaintiffs are generally the masters of their legal actions [and as] such, they bear the responsibility for preventing actual prejudice to their claims by investigating [and] memorializing testimony from potentially forgetful or absent witnesses"). Amfosakyi does not allege that Frito Lay did anything to prevent him from deposing company witnesses.

15

Accordingly, we conclude that Amfosakyi has not shown that the Magistrate Judge abused his discretion in denying his motion for sanctions and motion for reconsideration. Moreover, he has not shown through his allegations of litigation misconduct on Frito Lay's part that, in opposing the motion for summary judgment, he was effectively prevented from showing that there was a genuine issue of material fact to be resolved with respect to his allegation of disparate treatment, cf. Fed. R. Civ. Pro. 56(d).

For the foregoing reasons, we will affirm the order of the District Court granting Frito Lay's motion for summary judgment and motion for sanctions, and affirm the Magistrate Judge's orders denying Amfosakyi's motion for sanctions and motion for reconsideration.