DLD-181                                                        **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4025
_____

JOHNNIE DAVIS,
                                        Appellant
v.

PRISON HEALTH SERVICES, INC.;
DR. RICHARD STEFANIC; JOSEPH C. KORSZNIAK;
SUPT. MICHAEL WENEROWICZ, Sued in
their official and private/individual capacities
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-11-cv-07458)
District Judge: Eduardo C. Robreno
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
February 21, 2014

Before:    SMITH, HARDIMAN and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 10, 2014)
_____

OPINION
_____

PER CURIAM

Appellant Johnnie Davis, a state prisoner, appeals from an order of the District Court granting summary judgment to the defendants. For the reasons that follow, we will summarily affirm.

Davis, an inmate at the State Correctional Institution at Graterford, Pennsylvania ("SCI-Graterford"), filed a civil rights action, 42 U.S.C. § 1983, in the United States District Court for the Eastern District of Pennsylvania against Prison Health Services, Inc. ("PHS"), Dr. Richard Stefanic, Health Care Administrator Joseph C. Korszniak, and Superintendent Michael Wenerowicz, alleging a violation of his right to be free from cruel and unusual punishment under the Eighth Amendment. Davis, a long-time diabetic, saw Dr. Stefanic for routine medical care on May 2, 2011, after which Dr. Stefanic discontinued his diabetes medication, Glucotrol, without notifying him or consulting with him. Davis submitted a grievance to prison authorities on or about July 5, 2011, in which he stated that he had suffered a stroke as a result and in which he demanded that his Glucotrol be restored. That grievance was unsuccessful. Davis further alleged in his complaint that, on July 22, 2011, he suffered a second stroke, and "some loss of motor control," which he attributed to high blood sugar. Davis claimed that Dr. Stefanic abruptly discontinued his Glucotrol and "attempted to kill him," Complaint, at ¶ 22, all in order to save money for PHS. Davis alleged that PHS provides financial incentives to its physicians to deny proper medical treatment to prisoners, and he alleged that Dr. Stefanic's sole reason for discontinuing his medication was to reap a financial benefit for himself and PHS. Davis sought money damages.

In support of his claims, Davis attached to his complaint a photocopy of drug information relating to sulfonylureas, a class of drugs (including Glucotrol) used to treat

2

diabetes, which stated, among many other things, that "the dose may require gradual reduction if you have taken [the] drug for a long time." He also attached portions of a copy of what purported to be a 2007 contract between PHS and the Department of Corrections. Davis highlighted certain paragraphs of this contract, including one which stated that any cost savings relating to "Outside Medical Services" would be shared equally between PHS and the Department of Corrections. Davis also attached copies of his grievance, and his appeals relating to it.

Shortly after filing his complaint, Davis moved for appointment of counsel and for appointment of a medical expert to assist him. These requests were denied by the District Court without prejudice. Later, Davis asked the District Court to permit a fellow inmate to assist him and this request was granted. Pursuant to the defendants' motions, the District Court then dismissed Davis' medical malpractice claim for failure to file a certificate of merit as required by state law, see Pa. R. Civ. Pro. 1042.3(a); Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011) (certificate of merit statute is substantive state law and must be applied by federal court), and dismissed his claims against Administrator Korszniak and Superintendent Wenerowicz in their official capacities as barred by the Eleventh Amendment, which immunizes States and their agencies from suits for damages in federal court, see Pennhurst State School v. Halderman, 465 U.S. 89, 100-02 (1984).[1] The defendants then took Davis' deposition and moved for summary judgment on his remaining Eighth Amendment claims against the Commonwealth defendants in their individual capacities and

---

[1] The District Court correctly determined that these claims could not survive a Fed. R. Civ. Pro. 12(b)(6) motion to dismiss.

against the medical defendants. Following the filing of the summary judgment motion, the District Court held a status conference and ordered the Commonwealth defendants to produce all of Davis' medical records, and ordered Davis to then respond to the summary judgment motion. The District Court denied Davis' renewed request for appointment of counsel and a medical expert because his deposition testimony suggested that his claims lacked arguable merit.

The Commonwealth defendants moved for reconsideration of the discovery order, arguing that the court's order was burdensome and expensive. The defendants asserted that Davis had been an inmate at SCI-Graterford since 1984, that his medical records consisted of 4 volumes totaling approximately 2500 pages, and that Davis' claims pertained only to the treatment of his diabetes in 2011. Moreover, Davis and his inmate assistant had taken the opportunity to review Davis' entire file at the Graterford Medical Department, and the Medical Records Supervisor had offered to copy any part of the record that Davis requested. Davis opposed reconsideration and demanded his entire medical record. The District Court ordered the defendants to identify with specificity those medical records that were relevant to Davis' lawsuit. In response, the defendants identified 215 pages of lab reports, physical examinations, notes, treatments, consultation records, physicians' order forms, progress notes, glucose monitoring flow sheets, and medication administration records, all pertaining to Davis' treatment for diabetes in 2011. The District Court then ordered the defendants to produce only these records. Following the District Court's resolution of the medical records discovery issue, the action was stayed temporarily because Davis advised the court that he had suffered a heart attack.

4

When the case resumed, the defendants were ordered to refile their motions for summary judgment. Davis' deposition and six pages of medical records were submitted in support of the defendants' motions. In pertinent part, the medical defendants argued that there was no genuine issue of material fact relating to whether they were deliberately indifferent to Davis' medical needs because Dr. Stefanic did nothing more than exercise his medical judgment with respect to whether Davis continued to need medication to treat his diabetes. Even if his judgment was incorrect, the defendants argued, "the management of diabetes is a medical judgment and any alleged mismanagement is akin to medical malpractice." Defendants' Memorandum of Law in Support of Motion for Summary Judgment, at 11. In addition, the defendants asserted that, on July 22, 2011, the day Davis allegedly suffered a stroke, he went to work in the Weave shop which has no air conditioning unit. He passed out and woke up with slurred speech. He was taken to the infirmary, where he was given hydration and he recovered quickly. The defendants further argued that Davis' allegations regarding a financial motive for discontinuing his Glucotrol were conclusory.

Davis filed a cross-motion for summary judgment and a response in opposition to the defendants' motions for summary judgment. In support, he attached the same items that he submitted with his complaint and he also submitted his deposition. Davis did not attach any additional medical records to his motion or his written opposition.

In an order entered on September 16, 2013, the District Court awarded summary judgment to the defendants, determining that there was no genuine issue of material fact concerning whether either Dr. Stefanic or PHS had been deliberately indifferent to Davis' serious medical needs. The District Court reasoned that Davis pointed to no evidence in the

5

summary judgment record to support his claims. In addition, the Commonwealth defendants had shown that they were not personally involved in any constitutional violations and liability under section 1983 cannot be predicated on a theory of respondeat superior.

Davis appeals. We have jurisdiction under 28 U.S.C. § 1291. Our Clerk granted him leave to appeal in forma pauperis and advised him that the appeal was subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B) or summary affirmance under Third Cir. LAR 27.4 and I.O.P. 10.6.

We will summarily affirm the order of the District Court because no substantial question is presented by this appeal, Third Circuit LAR 27.4 and I.O.P. 10.6. Summary judgment is proper where the summary judgment record "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine issue of material fact is one that could change the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving parties have the initial burden of identifying evidence that they believe shows an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Moreover, we are required to view the facts in the light most favorable to the non-moving party, and make all reasonable inferences in his favor. See Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). Ultimately, however, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Deliberate indifference to serious medical needs is a violation of the Eighth Amendment and actionable under 42 U.S.C. § 1983. Estelle v. Gamble, 429 U.S. 97 (1976). To act with

6

deliberate indifference is to recklessly disregard a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 836 (1994). Because the standard is recklessness, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844. Mere disagreements over the type or amount of care provided do not state an Eighth Amendment claim. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

The six pages of medical records that the defendants submitted with their summary judgment motion revealed that Davis was seen in the prison infirmary on July 22, 2011. He came in with slurred speech but was given hydration and he soon recovered. The health care professional who treated him wrote that a "heat stroke" should be ruled out. In addition, a progress note written by Dr. Stefanic on May 2, 2011 confirmed that Davis was taken off Glucotrol. A Glucose Monitoring Flow Sheet provided Davis' blood sugar test results from July 14, 2011 to August 22, 2011, including these specific test results: July 14 - 219 mg%; July 17 - 110 mg%; July 18 - 114mg%; July 20 - 122 mg%; and July 22 - 124 mg%. Last, a Physician's Order Form signed by Dr. McDonald, who is not a defendant here, showed that she ordered that Davis be put back on Glucotrol on July 12, 2011.

Summary judgment for the defendants was proper here because Davis failed to point to any evidence in the record to support his allegation that the discontinuation of his Glucotrol caused him to suffer two strokes or that the decision to discontinue his medication was motivated by greed. He pointed to nothing in the summary judgment record to show anything more than that he suffered a single episode of either heat exhaustion, or possibly heat stroke, approximately 10 days *after* Dr. McDonald restored his Glucotrol on July 12, 2011. Moreover,

7

his medical records show that, although his blood sugar level on July 14, 2011 was 219 mg%, by July 17, 2011 it was down to 110 mg%, and on the day that he passed out, July 22, 2011, it was 124 mg%. On July 20, 2011, two days before he passed out, it was 122 mg%. At no time did Davis allege that these latter lab values were dangerously high. In his deposition, Davis testified that, between the time that Dr. McDonald restored his Glucotrol and July 22, 2011, the date he passed out, his blood sugar was dangerously high: "It was high. It was going up. * * * I … take finger sticks every day and when I stick my finger, the machine tells you what it is and it was 200, 250," N.T., at 32; but this testimony is contradicted by the Glucose Monitoring Flow Sheet contained in his medical records.

In short, Davis' personal opinion about what happened to him and why it happened is not competent evidence sufficient to defeat the medical defendants' motion for summary judgment. Matsushita Elec. Indus. Co., 475 U.S. at 587. Moreover, the "contract" he submitted showing that any cost savings relating to "Outside Medical Services" would be shared equally between PHS and the Department of Corrections is insufficient to permit a jury to conclude that Dr. Stefanic's decision to discontinue his Glucotrol was improperly motivated by greed. All of the complaint's references to cost-saving practices are conclusory and, as such, cannot suffice to defeat a properly supported motion for summary judgment.

In addition, although Davis argued that he was entitled to all of his medical records, the District Court did not abuse its discretion in limiting his access to only those medical records pertaining to the relevant time period, Fed. R. Civ. Pro. 26(b)(1). The District Court also properly exercised its discretion in denying Davis' motion for appointment of counsel, Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993) (case must have some merit in fact and law before

8

appointment of counsel is warranted), and in denying his request for appointment of a medical expert at public expense, see id. at 159 (indigent litigants generally must bear their own litigation expenses).

Davis' Eighth Amendment claim of deliberate indifference against the Commonwealth defendants rested on an allegation that Administrator Korszniak and Superintendent Wenerowicz failed to order the restoration of his Glucotrol in response to his grievance. Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 2002), holds that correctional defendant-administrators who were not themselves physicians cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Id. at 69. See also Spruill v. Gillis, 372 F.2d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). In Spruill, we held that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id. Spruill applies here because Davis did not show that the Commonwealth defendants' involvement in the matter consisted of anything more than reviewing his grievance and deferring to the judgment of medical personnel.

For the foregoing reasons, we will summarily affirm the order of the District Court granting summary judgment to the defendants.