**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1605
_____

MITCHELL WALL,
                              Appellant
v.

DR. BRIAN BUSHMAN; J. POTOPE, A.H.A.; NEYLON, Counselor;
OTHER UNKNOWN DEFENDANTS
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3:12-cv-02112)
District Judge:  Honorable Edwin M. Kosik
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 8, 2015
Before:  FUENTES, VANASKIE and SCIRICA, Circuit Judges

(Opinion filed: December 22, 2015)
_____

OPINION[*]
_____

PER CURIAM

        Pro se appellant Mitchell Wall, an inmate at USP-Allenwood, appeals the District

Court's order granting summary judgment in favor of defendant Dr. Brian Buschman[1] in

this Bivens[2] action alleging deliberate indifference to serious medical needs, in violation

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

of the Eighth Amendment's prohibition of cruel and unusual punishment. For the reasons set forth below, we will vacate the judgment and remand for further proceedings.

The core circumstances under dispute before the District Court were that Wall contended he received inadequate treatment for back pain for a period spanning a number of months, after which Dr. Buschman ignored an outside neurologist's recommendation for a lower-bunk permit. Then, Wall fell and re-injured his back during a climb up to his upper bunk on February 16, 2012, while he was waiting on that lower-bunk authorization. Wall's version of events was that Dr. Buschman was aware of (and should have acted on) the lower-bunk recommendation on January 31, 2012, because Wall told Dr. Buschman about the need for a lower bunk as soon as he returned from a visit with the neurologist, and because the consultation form that accompanied Wall back to the prison that day specifically recommended a lower-bunk assignment. Dr. Buschman, for his part, says he was not aware of any information from the neurologist until he read the full neurology report (which is a different document than the consultation form) on February 17, 2012— the day after Wall's fall. Wall also took issue with the treatment that he then received following his hospitalization for that re-injury.

The District Court initially denied Dr. Buschman's first motion for summary judgment because, as the District Court concluded, "a question of material fact surrounds Defendant Buschman's knowledge and conduct on January 31, 2012, in light of the

---

[1] Wall's pleadings (and the caption) misspelled Dr. Buschman's name.

[2] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

neurologist's recommendation that Plaintiff be assigned a lower bunk." [3]  Memorandum

at 5-6, D. Ct. Doc. No. 60.

After further discovery, Dr. Buschman filed another motion for summary

judgment.  The District Court acknowledged that Wall and Dr. Buschman described

versions of the record facts concerning Dr. Buschman's notice of the neurologist's

recommendation that were "at odds" with each other.  Memorandum at 17-18, D. Ct.

Doc. No. 89.  But this time around, the District Court concluded that entering summary

judgment in favor of Dr. Buschman was "not precluded" because he could have, in his

medical judgment, chosen to wait to review the full neurology report when he received it

on February 17, 2012, before making a decision on Wall's lower-bunk status.[4]  Id.  The

District Court therefore entered judgment in favor of Dr. Buschman.

This appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review the District

Court's order granting summary judgment de novo, applying the same standard as the

District Court.  Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007).  Summary

judgment is appropriate when the "movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

---

[3] The District Court also dismissed the case against two other defendants on the ground
that they were not personally involved in any alleged deliberate indifference due to their
administrative, non-medical roles at the prison.  Wall does not challenge that ruling.

[4] The District Court also concluded that, before and after Wall's fall, Wall received
consistent, competent treatment for his back.  Wall's appeal takes issue only with Dr.
Buschman's actions between January 31, 2012, and February 17, 2012 (when Wall fell
and re-injured his back).  We agree with the District Court that Dr. Buschman was not
deliberately indifferent to Wall's serious medical needs outside of that interval.

P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

We disagree with the District Court's conclusion that Dr. Buschman is entitled to summary judgment under the standards set out for actions based on deficient medical care in prison settings. The Eighth Amendment requires that prisoners receive access to basic medical treatment. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). But "[o]nly 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional violation." White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). Medical-malpractice allegations are insufficient to establish a constitutional violation. See id. (citing Estelle, 429 U.S. at 106). "When a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (citing Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

A prison official acts with deliberate indifference to a prisoner's medical needs only if he or she "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). That is the equivalent of recklessness. Id. at 836-37. "We have found 'deliberate indifference' in a variety of circumstances, including where the prison official: (1) knows of a prisoner's need for medical treatment

4

but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. We also have found 'deliberate indifference' to exist where the prison official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" Rouse, 182 F.3d at 197 (citations omitted); see also Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (prison officials may not choose an easier or less-efficacious treatment without regard to a prisoner's serious medical needs).

Here, the record shows that there is a genuine issue of material fact concerning whether Dr. Buschman recklessly disregarded the potential need for a lower bunk. Wall declares that on January 31, 2012, he personally observed Dr. Buschman receiving the neurologist's consultation note, that he personally observed Dr. Buschman reviewing that consultation form, and that Dr. Buschman nonetheless told Wall right then and there that Wall did not qualify for a lower-bunk permit. Pl. Statement of Facts at 6, D. Ct. Doc. No. 87. In contrast, Dr. Buschman declares that he "only co-signed" the January 31 consultation note on February 17, 2012, and that such a note "is placed" in the primary-care provider's mail box upon receipt at the prison medical center for review by that other physician. Pl. Ex. to Statement of Facts, Pt. 1 at 17, D. Ct. Doc. No. 87-1. Dr. Buschman's interrogatory responses also declare that he was not aware of the neurologist's recommendation until February 17, 2012, but the responses also admit that Wall at least spoke with Dr. Buschman "in passing" about the neurologist appointment.

5

Pl. Ex. to Statement of Facts, Pt. 2 at 17-18, 27, D. Ct. Doc. No. 87-2; see also Def. Statement of Facts at 2-3, D. Ct. Doc. No. 88.

Based on the above, the District Court erred when it concluded that the record shows that it is indisputable that Dr. Buschman exercised unreviewable medical judgment in not acting on Wall's lower-bunk request on January 31, 2012. While Dr. Buschman says he had no knowledge of the neurologist's recommendation as of January 31, 2012, he presents no direct denial or record evidence to contradict Wall's averment that Wall spoke with Dr. Buschman about the lower-bunk recommendation, or that Dr. Buschman had the neurologist's consultation note in his hands before the paperwork was slotted into Wall's primary-care provider's mailbox. Under these facts, Dr. Buschman's mental state remains at issue, and sufficient evidence is in the record to allow a rational factfinder to conclude that Dr. Buschman recklessly disregarded the need for Wall to have a lower-bunk assignment.

Dr. Buschman's main response is that, even if he had known about a recommendation for a lower bunk on January 31, 2012, he need not have acted on it then because it was only advice, and because Wall's primary-care provider would eventually have seen the paperwork to act on it later. That is in tension with Dr. Buschman's statements in support of summary judgment. Dr. Buschman appears to argue both that he never knew about the neurologist's recommendation until February 17, 2012, but also that he exercised his medical judgment in not following that advice on January 31, 2012. It is hard to see how Dr. Buschman can be said to have exercised "judgment" concerning

6

circumstances about which he disclaims knowledge. Furthermore, Dr. Buschman does not dispute that Wall's primary-care provider was in training at that time.

Moreover, the record contains evidence that could support an inference that the decision to deny a lower bunk was made for non-medical reasons, which also undermines Dr. Buschman's arguments in favor of summary judgment. See Rouse, 182 F.3d at 197. For example, in March 2011 a prison administrator emailed the medical staff, including Dr. Buschman, stating that lower bunks were in short supply and asking the medical staff to restrict the number of lower-bunk permits they would issue. Pl. Ex. to Statement of Facts, Pt. 1 at 95, D. Ct. Doc. No. 87-1. Although Dr. Buschman declared that he made all lower-bunk decisions on an individualized basis using medical criteria, a jury might not credit that statement in light of the potential contrary evidence.

For the foregoing reasons, we will vacate the judgment and remand the case to the District Court for further proceedings consistent with this opinion. Also, on remand the District Court may wish to revisit Wall's request for the appointment of counsel at an appropriate time. See Tabron v. Grace, 6 F.3d 147, 155-157 (3d Cir. 1993); Order at 2, D. Ct. Doc. No. 83 ("In the event, however, that future proceedings demonstrate the need for counsel, the matter may be reconsidered either sua sponte or upon motion of Plaintiff.")