**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1510
_____

WILLIAM HARRIS,
                              Appellant
v.

BRIAN HYDE, Health Care Administrator; SUPERINTENDENT SOMERSET SCI;
HEIDI SROKA, Superintendent's Assistant; JOSEPH MAZURKIEWICZ,
Deputy Superintendent; HARR, Lieutenant; ROBERT D. KINZEY, JR., Lieutenant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 3-15-cv-00039)
Magistrate Judge (by consent): Honorable Lisa P. Lenihan
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 7, 2017
Before:  SHWARTZ, COWEN and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 7, 2017 )
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

William Harris appeals pro se from the District Court's orders awarding summary in his 42 U.S.C. § 1983 action. We will affirm.

I.

Harris initiated this action in 2015 against various officials from SCI-Somerset after his prescribed knee braces were temporarily confiscated following his transfer to the Restricted Housing Unit (RHU). He alleged (among other things) that: (1) Corrections Healthcare Administrator Brian Hyde denied him adequate medical care by delaying the return of the braces for about a month, and (2) Lieutenants Harr and Kinzey retaliated against him for filing grievances related to the untimely return.

**The medical-care claim**

Harris was transferred to the RHU on November 20, 2014, and, according to Hyde's affidavit submitted in support of his motion for summary judgment, Harris' knee braces were mistakenly confiscated that day (by an unnamed RHU officer) because RHU staff did not know that Harris had a permanent prescription for the braces. Hyde stated that "[o]nce [he] became aware of this misunderstanding, [he] informed [] Harris that he would need to sign up for sick call so that the confusion with his knee braces could be resolved." Harris apparently refused to do so, but his knee braces were eventually returned on December 28, 2014, "after the medical department reviewed the circumstances surrounding his case."

Harris conceded that his braces were returned on this date, but in the meantime, filed a grievance (539347) against Hyde regarding the untimely return.[1]  This grievance was denied on initial review, with the grievance officer observing that Harris was "directed to sign up for sick call and [was] even offered it free of charge to rectify the matter," but that Harris "chose to not follow that direction which is what resulted in [his] not having immediate return of [the] knee sleeves."  The facility manager, and eventually the Secretary's Office of Inmate Grievances and Appeals, upheld the denial.

**The retaliation claim**

Meanwhile, Kinzey was assigned to investigate Harris' knee-brace grievances, and allegedly advised Harris on December 17, 2014, that his knee braces would be returned, but only if Harris would "sign off," or withdraw, the grievances.  Harris apparently refused to do so, and claimed that he spoke to Harr later that day, who allegedly advised Harris that "I could drag my feet on gettin' them to you if you keep playing games and don't sign off on [the grievances]."  Harris filed a grievance that day against Kinzey and Harr, claiming that conditioning the return of the braces on his withdrawing the grievances was "retaliatory," and amounted to "extortion."

Upon initial review of this retaliation grievance, the grievance officer "[upheld] the grievance in part because per policy it is not required for an inmate to willingly sign off on a grievance."  He denied the portion of the grievance alleging retaliation, however,

---

[1] Harris filed an earlier grievance (538871) about his inability to get his knee braces back, but did not name Hyde (or any other Defendants) in that grievance.

concluding that Harris "did receive the knee sleeves and therefore this grievance was not filled [sic] in good faith as required by policy; for this reason I find this grievance to be frivolous."

**Procedural history**

The District Court treated Harris' complaint as alleging inadequate medical care, retaliation, conspiracy, and due-process claims against the supervisory Defendants based on their involvement in the grievance process. In late 2016, the District Court awarded summary judgment on the conspiracy, due-process, and medical care claims, opining (as to the medical care claim) that there was no evidence of deliberate indifference prior to December 17 because "the record is clear that the confiscation of Plaintiff's knee sleeves was simply per policy and the withholding of them thereafter was due to a misunderstanding." The Court conceded that "what occurred during the eleven days between December 17, 2014[,] and December 28, 2014, is unclear," but concluded that "[w]hat is fatal to Plaintiff's claim is that he fails to explain or provide any evidence as to what occurred between [these dates]. Plaintiff relies on the disputed statements allegedly made by Kinzey and Harr as evidence that they intentionally withheld his knee braces for his failure to sign-off on his grievance, but he has produced no other evidence that the Defendants intentionally withheld his knee braces during this period of time."

In early 2017, the District Court awarded summary judgment on the remaining retaliation claim, observing that "filing a grievance is a constitutionally protected

activity," but concluding that Harris had not shown an adverse action.[2]  This timely appeal ensued.

## II.

We have jurisdiction under 28 U.S.C. § 1291.  On appeal, Harris challenges both summary-judgment orders, but only with respect to his medical-care and retaliation claims.[3]  We exercise plenary review and apply the same test the District Court utilized— whether the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009) (quoting former Federal Rule of Civil Procedure 56(c)).

We do not doubt that a month-long denial of knee braces, under the circumstances presented here, could rise to the level of a serious medical need triggering the Eighth Amendment—and it does not appear that the District Court doubted this either.[4]  The

---

[2] The Court opined: "[Harris] could have suffered an adverse action only if he was entitled to use of the knee braces on December 17, 2014, the day Kinzey and Harr allegedly told Plaintiff that he could have them back if he signed off on his grievance. Kinzey and Harr could not have denied Plaintiff his knee braces (the adverse action) if they were not available for use at that time—i.e., the investigation into whether or not he was entitled to them . . . was still ongoing."

[3] Harris does not contest the District Court's award of judgment on his conspiracy or due-process claims, and thus we will not address those claims here.  See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

[4] The record before the District Court included Harris' statement that not having the braces "prevents me from having my [blood pressure] monitored because I have no stabilizing knee[] support to allow me without pain to bend my knees to lower my arm to

District Court, instead, rejected this claim because Harris had not put forth evidence that any Defendant was deliberately indifferent to this medical need. We agree, but for a slightly different reason. See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 321 (3d Cir. 2013) ("[W]e can affirm on any basis supported by the record.") (internal citation omitted).

It is clear—from Harris' grievances, complaint, and opening brief—that his medical-care claim is against Hyde, and Hyde only. Harris' primary argument on appeal is that "Hyde had an obligation to review [his] medical records" and authorize the return of the knee braces sooner. But the record below shows that Harris was under the supervision of medical staff for the month he was without his braces,[5] and Harris has not disputed this. Under these circumstances, he cannot show that Hyde acted with deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (holding that non-physicians cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").

_____

the 'pie hole' for the [blood pressure] cuff. I endured the pain for the first 5 days but the accumulation of those flexations without my knee[] supports surpass[es] my pain tolerance."

[5] For instance, the grievance officer responding to Harris' initial grievance about his knee braces (538871) stated that he "contact[ed] the medical department and was informed that [] Harris [was] being monitored, [and was] in no immediate danger of a serious health risk[.]"

As to his retaliation claims against Kinzey and Harr, Harris filed only one grievance (543368) about their alleged misconduct, and the grievance officer rejected Harris' retaliation claim as "frivolous." The Defendants argued below that Harris failed to properly exhaust his administrative remedies because he never appealed this adverse determination, but the District Court opted to resolve Harris' retaliation claims on their merits. Nonetheless, because the record is clear that Harris failed to appeal the initial denial, he did not properly exhaust his administrative remedies with respect to these claims.[6] Accordingly, we will affirm the judgment of the District Court.[7]

---

[6] The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust available administrative remedies before filing suit, see 42 U.S.C. § 1997e(a), and this "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). DC-ADM 804, which governs the grievance and appeals process in Pennsylvania correctional institutions, provides for a three-step process, and a prisoner must follow each of these steps to properly exhaust his administrative remedies under the PLRA. See Booth v. Churner, 206 F.3d 289, 292 n.2, 299 (3d Cir. 2000) (noting that plaintiff "did not take full advantage of the administrative procedures available to him" in failing to use steps two and three of DC–ADM 804). Harris never reached stage two or three.

[7] Harris also argues on appeal that the District Court "erred in not appointing counsel." Because his claims are meritless, we detect no abuse of discretion in the District Court's denial of his motion for appointment of counsel. See Tabron v. Grace, 6 F.3d 147, 158 (3d Cir. 1993).