**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2030
_____

ANDREW FULLMAN,
                                        Appellant
v.

CITY OF PHILADELPHIA; BARBARA A. MCDERMOTT;
RICHARD ROSS, JR., Police Commissioner; EILEEN A. BONNER;
JOHNNIE MAE CARTER, #1305; WILLIAM DORNEY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civil Action No. 2:17-cv-02673)
District Judge: Honorable Eduardo C. Robreno

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 23, 2024

Before:  KRAUSE, MATEY, and CHUNG, <u>Circuit Judges</u>.

(Opinion filed: March 5, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Pro se appellant Andrew Fullman appeals the District Court's grant of summary judgment in favor of defendants in his civil rights case. For the reasons that follow, we will affirm the District Court's judgment.

I.

In 2017, Fullman filed a civil rights complaint in the District Court naming as defendants the City of Philadelphia, former Philadelphia Police Commissioner Richard Ross, Jr., and Eileen A. Bonner, an agent with the Gun Violence Task Force for the Pennsylvania Office of Attorney General. He alleged violations of his due process and equal protection rights, as well as retaliation in violation of 42 U.S.C. § 1983.

Fullman testified to the following facts at a deposition. In 2014, Fullman witnessed two shootings. In May 2014, he saw Hakeem Harmon shooting a firearm. Fullman gave a statement about the shooting to Bonner. Fullman never signed a confidential informant agreement with Bonner, but he claims that Bonner told him that she would not disclose his statement. In August 2014, he observed a second shooting, where one of the shooters was his nephew. No one was injured in either shooting.

Fullman maintains that, two years later, Bonner revealed details about his statement to police officers or a prosecutor, who in turn revealed those details to Harmon and his nephew. Fullman's nephew and Harmon threatened Fullman after they found out about his statement. Fullman then sent letters and complaints to the Philadelphia Police Department and Commissioner Ross regarding this incident. He also claimed that there

2

had been a coverup of the two shootings because the suspects he had identified were never arrested or charged.

In his civil rights action, Fullman alleged that Bonner and the Philadelphia Police Department were negligent in disclosing his statement and that they did so in retaliation for his complaints about how the police were investigating the shootings. He also alleged that defendants ignored his letters and complaints. The District Court denied defendants' early motions to dismiss, ordering defendants to depose Fullman and explaining that it would hold a discovery conference after defendants filed motions for summary judgment.

At the discovery conference, the District Court instructed Fullman to include discovery requests in his summary judgment response, and to explain why his requests were necessary for him to fully complete his response. Fullman then filed a motion seeking to add new parties to the case; the District Court denied his motion without prejudice. At Fullman's request, the case was placed in suspense for several years; he was granted numerous extensions of time to respond to the defendants' summary judgment motions. He ultimately filed summary judgment responses and separately filed a motion with discovery requests. He also filed a new amended complaint and a separate motion to add new parties to the case. The District Court granted summary judgment for defendants, denied Fullman's motions, and struck his new complaint. Fullman timely appealed.[1]

---

[1] Fullman sought reconsideration after summary judgment was granted for defendants; his motion was denied. He did not appeal that decision and thus we do not review it here.

3

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment for defendants. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

III.

We agree with the District Court's grant of summary judgment for the defendants. For Fullman's § 1983 claim against the City of Philadelphia, he never identified a policy or custom that resulted in his alleged constitutional violations. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978); see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Rather, he claims that his witness statement was improperly released and that police officers failed to investigate crimes he reported, but there is no record evidence that either action stemmed from a City policy or custom. There is also no evidence of Commissioner Ross's personal involvement with either of these issues, which Fullman must establish to support a § 1983 claim against him. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Fullman claims that Ross must have been aware of Bonner's disclosure and the alleged coverup because Fullman sent him letters by certified mail to

4

notify him, but there is no evidence that Ross personally received or read the letters, let alone that he had any involvement with either issue. See id. at 1208.

Next, to the extent that Fullman sought to sue Bonner in her official capacity as an employee of the Commonwealth of Pennsylvania, state employees in their official capacities are not "persons" who can be sued for damages under § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Fullman appears to argue in his appellate brief that he was seeking to sue Fullman in her individual capacity on his due process, equal protection, and retaliation claims. However, Fullman did not have a constitutionally protected privacy interest in the information he provided to Bonner as a witness. See Scheetz v. The Morning Call, Inc., 946 F.2d 202, 207 (3d Cir. 1991) ("[T]he information contained in a police report is not protected by the confidentiality branch of the constitutional right of privacy."). He also did not have a constitutionally protected interest in keeping his reputation intact such that he was deprived of a liberty or property interest. See Paul v. Davis, 424 U.S. 693, 712 (1976). Setting aside that there is no evidence in the record that Bonner revealed Fullman's witness statement to any third party, Fullman has not explained how Bonner violated any protected constitutional interest beyond conclusory insistence that she "caused a deprivation of . . . [his] federal rights." See Appellant's Br. at 1. Further, because Fullman has never explained how he was treated differently than any similarly situated individual, he cannot establish an equal protection claim. See Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008) ("[T]o state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant[.]").

5

Fullman also cannot establish a § 1983 retaliation claim against Bonner because there is no record evidence of a causal link between his conduct and the retaliation he claims occurred. See Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006) (requiring, among other factors, "a causal link between the constitutionally protected conduct and the retaliatory action" to allege a First Amendment retaliation claim under § 1983). Fullman argues that Bonner retaliated against him by releasing his witness statement because he complained to the police about an alleged coverup of the crimes he witnessed. However, according to the record evidence, Fullman began contacting the police about their investigations only *after* he was threatened by Harmon and his nephew in 2016, which was supposedly after his statement was released. This timeline cannot support a finding that Fullman's witness statement was released because he complained to police about their handling of the investigations into the shootings. Fullman's appellate brief does not clarify this issue. To the extent that Fullman claims that the defendants retaliated against him for making a report to Bonner, he has presented no evidence to support that theory.

We see no error in the District Court's discovery rulings that Fullman challenges on appeal. See Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 281 (3d Cir. 2010) (reviewing a district court's discovery orders for abuse of discretion, explaining that we "will not disturb such an order absent a showing of actual and substantial prejudice"). The District Court held a hearing where it discussed Fullman's discovery needs and gave him an opportunity to file discovery requests that were relevant to the claims he sought to bring. However, Fullman did not explain how the interrogatory answers and documents he sought would preclude a grant of summary judgment under these circumstances. Many of his

requests were legal research questions rather than requests that addressed factual issues, and he did not explain how his factual requests were relevant to his claims. Fullman argues on appeal that further discovery would have revealed the names of officers who came to the crime scenes to collect ballistics evidence and thus must have participated in a coverup of the shooting investigations, but he has not clarified how this information would have assisted him in proving his claims.

Finally, the District Court did not err in denying Fullman's requests to amend his complaint. See Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 193 (3d Cir. 2001). One of his proposed complaints involved wholly unrelated parties and claims. He also sought to add an officer who responded at the scene of one of the shootings as a party, as well as officers who responded to his police complaint letters. Although Fullman insists that he has identified the individuals somehow responsible for the alleged coverup his claims are based on, he does not dispute in his appellate brief that his proposed amendments were barred by the applicable statute of limitations. Nor does he meaningfully challenge the District Court's conclusion that his proposed amendments did not relate back to his operative complaint pursuant to Federal Rule of Civil Procedure 15(c) because he could not show that the proposed defendants had either actual or constructive notice of his lawsuit.[2] See id. at 196 (describing the shared attorney and identity of interest theories of imputing notice).

---

[2] Similarly, Fullman mentions the District Court's denial of his request for appointment of counsel but does not explain why he believes that decision was incorrect. In any event, we discern no abuse of discretion in the District Court's ruling under the circumstances of this case. See Tabron v. Grace, 6 F.3d 147, 158 (3d Cir. 1993).

7

Accordingly, we will affirm the judgment of the District Court.

---

Additionally, Fullman claims that the District Court was biased against him because it called him "a notorious and prolific litigant." <u>See</u> Appellant's Br. at 3. We cannot locate any such reference to Fullman by the District Court in this case; it appears that this statement appeared in a different case brought by Fullman several years ago, where we concluded that it did not support a finding of bias. <u>See</u> <u>Fullman v. City of Phila.</u>, 722 F. App'x 242, 245 (3d Cir. 2018) (per curiam).